## A. S. McCAMANT ET AL. v. M. D. ROBERTS.

### No. 6623,

1.   **Mortgage.**—In order to constitute a mortgage there must be a debt to be secured, and while there may not be an express promise to pay it it must exist, and the vendee must have a right to recover the same. The relation of debtor and creditor must continue to exist after the execution of the transfer or there is no mortgage.

2.   **Ancient Instrument — Recorded Instrument.** — A paper was executed in 1841. In 1887 it was offered in evidence by one claiming right to land under it. It had not been recorded. It was not offered as a recorded instrument, nor had it been filed and three days notice been given. *Held,* that article 2257, Revised Statutes, has no reference to such instruments, and the paper was properly admitted in evidence. It not being attacked the court properly regarded it as genuine.

3.   **Evidence held Sufficient to Identity of Person.**—See testimony held sufficient to sustain a finding of the identity of W. T. Evans, who executed a transfer for a land certificate in 1841, with one of that name to whom the certificate issued.

4.   **Records, Affidavits, etc.**—When bearing upon the identity of a party through whom rights are asserted, his affidavits in conflict with such claim made in application for pension, etc., are competent. So the Comptroller's records to negative his assertion of payment of taxes, etc.

5.   **Opinion Testimony.** — It was improper to admit the answer of a witness in evidence: "From the knowledge I had of William T. Evans I believe he was the identical person he represented himself to be." The facts alone should have been admitted, leaving the weight to the jury. But as it is evident the testimony caused no injury the error is no ground for reversal.

6.   **Certificate from Comptroller to Payment of Taxes.** — The Comptroller's certificates were admissible to show acts of ownership and claim to the land by the

person paying the taxes.    Also to contradict testimony by another who had testified to payment upon same property, the records showing otherwise.

7.    **Possession of Land—Notice.**—The fact that Scott was residing upon the land as tenant of Roberts was notice to McCamant and others of Roberts' claim to the land at their purchase of an adverse claim.

8.    **Jurisdiction of Probate Court — Debts Presumed. —** Administration was opened in Harris County two years after death of intestate.    The petition alleged, among other necessary allegations, the existence of debts against the estate.    It was not shown that any existed.    *Held,* courts would not be authorized to presume in this case that there were no debts against the estate, as was done in the case of Duncan v. Veal, 49 Texas, 603, where letters were granted fourteen years after the death of the person whose estate was put in administration.

9. .   **Impeaching Witness—Statement of Facts on Former Trial.**—A witness may be impeached by showing that he testified differently on a former trial when a proper predicate is laid, but it would be unjust to a witness to allow a statement of facts to be used for such a purpose, whether it was agreed to by counsel or made up by the court.

### ON REHEARING.

10.    **Construction of an Instrument held to be a Mortgage.**—The instrument involved was made June 11, 1841.    It was in the usual form of a mortgage.    It consists of the conveyance of the certificate and the land to be located thereunder, coupled with a condition of defeasance.    The conditions to be performed are that the grantor shall convey unto the grantee one-third of the land to be located within three·months from the time when the patent should issue, and should within twelve months repay to him the sum of $250.    If such payment should not be made within twelve months it should bear interest.    This is held to be on its face a mortgage and not a conditional sale.

11.    **Construction.**—In doubtful cases courts are inclined to hold a conveyance to be a mortgage rather than a conditional sale.

APPEAL from Taylor.    Tried below before Hon. T. H. Connor.

Suit was filed August 23, 1883, being an action of trespass to try title to the Wm. T. Evans one-third league tract.    Both parties claimed under Evans.    The plaintiff Roberts claimed under an instrument of date June 11, 1841, which is set out in the opinion of Judge Collard.

*Chas. I. Evans,* for appellants.—1.    The court below erred in admitting in evidence over the objections of defendants the instrument offered by plaintiff, dated June 11, 1841, signed by Wm. T. Evans, because said instrument is not a conveyance of the land certificate, but is only a mortgage to secure the payment of $250, and a bond for title to one-third of the land to be thereafter located by virtue of the certificate, and because the execution of said instrument was not proved.    Astugueville v. Loustaunau, 61 Texas, 233; Ruffier v. Womack, 30 Id., 339; Alstin v. Cundiff, 52 Id., 453; Hubby v. Harris, 68 Id., 91; Hervey v. Edens, 69 Texas, 420; Stroud v. Springfield, 28 Texas, 649.

2.    The court below erred in overruling the motion of defendants to exclude from the consideration of this case as evidence the instrument

dated June 11, 1841, signed Wm. T. Evans, on the ground that it had never been filed among the papers of the cause and notice of such filing given to the defendants.   Gaines v. Salmon, 16 Texas, 311.

3.   The court below erred in admitting in evidence over the objections of defendants the certified copy of the probate proceedings of the County Court of Harris County, in the matter of the estate of Chas. Chamberlain, deceased, on the ground that said transcript did not show on its face that said court had ever acquired jurisdiction over said estate, in this, that it did not appear from said transcript that any debts existed against said estate nor that more than four years had not elapsed after the death of said Chas. Chamberlain and before administration was granted on his estate.   Duncan v. Veal, 49 Texas, 603; Chinn v. Taylor, 64 Id., 385.

4.   The court below erred in sustaining the objection of plaintiff's counsel to the answer of the witness D. J. Collins to the eleventh direct interrogatory propounded to him by defendants, as follows:   "From the knowledge that I had of W. T. Evans, I believe he was the identical person he represented himself to be," and in excluding said testimony.   Albright v. Corley, 40 Texas, 113; 1 Greenl. on Ev., sec. 440.

5.   The court below erred in sustaining the objections of plaintiff to the testimony of witness T. F. Scott, as contained in the statement of facts on the former appeal of this cause, and the fourth paragraph of the general charge of the court on the former trial of this cause, offered by the defendants for the purpose of showing that the witness Scott testified differently on the former trial of this cause to what he did on the last trial, and in excluding said testimony. 1 Greenl. on Ev., sec. 552.

6.   The court below erred in overruling defendants' objections to the certificate of the Comptroller of the payment of taxes on the land in controversy from the year 1864 to the year 1882; the certificate of the Comptroller of the assessment of W. T. Evans for the years 1881, 1883, 1876, 1879 and 1881; the certified copies of the muster roll from the General Land Office of return made by Colonel J. C. Neil of the men remaining in the garrison of Bexar when he left; of the muster roll of Captain Heard's company; of the muster roll of Captain Ingram's company; of the muster roll of Colonel Sherman's regiment; to all of which defendants objected because irrelevant; and in admitting the same in evidence over the objections of defendants.   Murphy v. Welder, 58 Texas, 235; Mast v. Tibbles, 60 Texas, 301; Williams v. Conger, 49 Id., 582; Rivers v. Foote, 11 Id., 662.

*John Bowyer*, for appellee.—1.   Tenant can not dispute his landlord's title.   Tyler v. Davis, 61 Texas, 674, 675; Juneman v. Franklin, 67 Texas, 411; Towery v. Henderson, 60 Texas, 295.

2.   The court did not err in holding the original instrument, dated June 11, 1841, to be a conditional sale and not a mortgage.

The instrument left it within the option of W. T. Evans to pay or not the $250 and to convey the one-third of the land, and did not confer upon Chamberlain a right of action against W. T. Evans. Conway v. Alexander, 7 Cranch, 218; Hubby v. Harris, 68 Texas, 91, and authorities cited in appellants' brief under second assignment.

3. The tax receipts, muster rolls, etc., were all admissible. The issues were, first, that the W. T. Evans through whom appellants claim was not the original grantee of the certificate; and second, if he was the original grantee then he had previously sold to Chas. Chamberlain.

COLLARD, JUDGE.—Action of trespass to try title brought by M. D. Roberts, the appellee, against A. S. McCamant, H. O. Tyler, John B. Turner and W. E. Stewart in the District Court of Jones County, August 23, 1883, to recover one-third of a league of land patented to Wm. T. Evans, December 11, 1861, by virtue of duplicate certificate for one-third of a league of land in lieu of his original headright certificate issued to him by the board of land commissioners of Harrisburg County in 1838.

Defendants answered by plea of not guilty, and specially pleading their title.

The case was before the Supreme Court once before upon the question of the admissibility of a judgment of the District Court of Shackelford County in the case of Wm. R. Baker v. The Unknown Heirs of Wm. T. Evans, brought to establish the original deed of Wm. T. Evans to Chas. Chamberlain, of date June 21, 1841, the deed being established by the judgment. The Supreme Court's decision was that the judgment was *inter alios acta* and was not admissible in this action to establish title in plaintiff against defendants. That question is not now before the court, but we refer to the case for a better understanding of the matters now presented. McCamant v. Roberts, 66 Texas, 260.

The plaintiff now deraigns title as follows:

1. An original instrument signed by Wm. T. Evans to Chas. Chamberlain, claimed by plaintiff to be a sale or conditional sale of the certificate; claimed by defendants to be only a mortgage, and also claimed by them to have been executed by some one personating the true Wm. T. Evans, or at least not by him. This instrument is dated June 11, 1841.

2. Administrator's sale under the order of the Probate Court of Harris County in the succession of Chas. Chamberlain, deceased, and deed of the administrator to August C. Daws, dated August 29, 1851.

3. Deed of Daws to W. R. Baker conveying the duplicate certificate dated February 14, 1852.

4. Deed of Baker to plaintiff conveying the land located by virtue of the certificate October 11, 1882, reciting a consideration of $3500,

of which $500 are paid in cash, and reserving a vendor's lien for the balance.

The defendants claim title:

1. By deed of Wm. T. Evans, of Anderson County, to A. S. McCamant, H. O. Tyler, and John B. Turner for the land, dated April 28, 1883, for a consideration of $1500.

2. Deed of McCamant, Tyler, and Turner to defendant W. E. Stewart for 492 acres, the east third of the survey.

The case was tried by the presiding judge, who gave judgment for the plaintiff Roberts for the land, and the defendants have appealed.

The court's conclusions of fact and law are as follows:

1. That the Wm. T. Evans under whom the plaintiff claimed is the Wm. T. Evans who in 1841 joined with D. T. Chamberlain in advertising for the lost original certificate No. 18, and who executed to D. T. Chamberlain a power of attorney to procure a duplicate, and that he also executed the instrument of date June 11, 1841, purporting to convey to D. T. Chamberlain the duplicate when issued.

2. That the Wm. T. Evans under whom plaintiff claims is the Wm. T. Evans to whom the original certificate and the duplicate, by virtue of which the land in controversy was located, issued and to whom it belonged.

3. That if the Wm. T. Evans under whom the defendants claim is the Wm. T. Evans to whom said certificates originally issued, a fact about which I am not at all certain, then he executed the instrument dated June 11, 1841, referred to in the first subdivision of these findings, and ought to be bound by its terms; and that he nor his vendees, with notice of plaintiff's title, ought at this late day be permitted to contend that said instrument of June 11, 1841, was a mortgage and not a conditional sale, not even offering to convey to the vendees of Chamberlain's interest the one-third locative interest.

4. That in fact the said instrument of date June 11, 1841, mentioned in the first clause of these findings, is a conditional sale and not a mortgage.

5. That by defendants' own testimony there was established an absolute conveyance of the duplicate certificate from the Wm. T. Evans, to whom it of right belonged, to D. T. Chamberlain, some time in June, 1841.

6. That W. R. Baker, by and through his tenant Scott, had actual possession, holding and claiming it adversely to all the world, from some time in January, 1880, and that while defendants McCamant and Stewart were then on the land that they nor either of them began to claim or remain on the land in hostility to Baker's title until about three weeks prior to the date of the deed from Wm. T. Evans, under whom they claim, to-wit, some time in April, 1883.

7. That defendants had full notice, actual and constructive, of plaintiff's claim and title long prior to and at the time of their purchase from William T. Evans, under whom they claim.

8. That defendants McCamant and Stewart were tenants on the land in controversy at will or sufferance, first of William R. Baker and second of M. D. Roberts, from 1880 until about the time of their purchase, when they first began to repudiate the Baker title.

My conclusion as to law in addition to those hereinbefore incidentally given in connection with the conclusions of fact, is simply that under the facts found the plaintiff is entitled to recover in this action.

The first important question requiring our consideration in the case is propounded by the assignment of error complaining that the court erred in admitting in evidence over objections of defendants the instrument dated June 11, 1841, signed by William T. Evans, because, it is insisted, the instrument is not a conveyance of the land certificate, but is only a mortgage to secure the payment of $250 and a bond for title to one-third of the land to be thereafter located, and because the execution of the instrument was not proved. The instrument is as follows:

"Whereas I, William T. Evans, of the county and Republic aforesaid (Republic of Texas, county of Galveston), have by an instrument of writing bearing even date with these presents, and under my hand and seal, made, constituted, and appointed Charles Chamberlain of the same place my true and lawful attorney in fact special, with full power and authority for me and in my name to obtain from the General Land Office of this Republic a duplicate certificate of headright to one-third of a league of land, the original of which (issued from the board of land commissioners of the county of Harrisburg, now Harris, on or about the 28th day of June, A. D. 1838) has been lost, and to locate the same, and after location to obtain a patent for the land so located; granting to him, the said Chamberlain, full power in and about the premises.

"Now know all men that I, the said Evans, in consideration of the said several services, and in further consideration of $250 to me in hand paid by the said Chamberlain (the receipt whereof I do hereby acknowledge), have granted, bargained, sold, and released unto the said Chamberlain all of my interest, right, and claim of, in, and to the said duplicate certificate, and all the land that may be located under the same.

"To have and to hold the said granted premises unto the said Chamberlain, his heirs and assigns forever. Provided always nevertheless, that if the said Evans, his executors and administrators, shall within three months after the issuing of the patent referred to make and execute a full and perfect legal conveyance of one-third of the said land unto the said Chamberlain, his heirs, executors, and administrators, and shall moreover repay unto the said Chamberlain, his executors and administrators, within twelve months from the date of these presents, the said

sum of $250 (with interest thereon if unpaid in said twelve months), then and from thenceforth these presents and every matter and thing herein contained shall cease, determine, and be utterly void, anything herein contained to the contrary notwithstanding.

"Witness my hand and seal this 11th day of June, A. D. 1841."
    [Signed]                             "WM. T. EVANS."

In order to constitute a mortgage there must be a debt to be secured, and while there may not be an express promise to pay it it must exist, and the vendee must have a right to recover the same. Hubby v. Harris, 68 Texas, 95. The relation of creditor and debtor must continue to exist after the execution of the transfer or there is no mortgage. Alstin v. Cundiff, 52 Texas, 453.

Chief Justice Willie says: "It is a good test as to relation of creditor and debtor to ascertain whether or not the apparent vendee has any right of action against the vendor for the money which formed the consideration of the conveyance." Calhoun v. Lumpkin, 60 Texas, 189.

It is decided in Berryman v. Schumaker, 67 Texas, 314, that where it is optional with the vendor to avail himself of a condition subsequent and he does not do so, the instrument will stand as a conveyance.

There was no objection in the lower court to the instrument because it was not proved, and this part of the assignment will not be considered.

It was also objected to because it had not been filed among the papers three days before the trial and notice given of such filing to defendants. The transfer was not offered as a recorded instrument. The law requiring the filing and notice of an instrument in writing only applies in cases where it is offered as a recorded instrument. Rev. Stats., art. 2257. There was no objection to the introduction of the instrument because it was not properly proved.

There are two assignments of error that may be discussed together, one complaining of the court's finding that the Wm. T. Evans who executed the transfer to Charles Chamberlain June 11, 1841, was the person to whom the certificate issued, and the other complaining of the finding that if the William T. Evans, of Anderson County, under whom defendants claim, was the person to whom the certificate issued, then he executed the transfer to Chamberlain. The appellants contend that the evidence is contrary to both findings.

The facts bearing upon the proposition are as follows: The original one-third of a league headright certificate granted to Wm. T. Evans was lost, and on the 11th day of June, 1841, some one, either Wm. T. Evans the owner, or some one claiming to be the owner and styling himself Wm. T. Evans, by written power of attorney empowered Charles Chamberlain to procure a duplicate and made affidavit of the loss of the original, and on the same date executed the transfer before set out. The affidavit of loss and acknowledgments of the due execution of the

power of attorney and transfer were all made in Galveston before J. P. Cole, a notary public, on the same day, June 11, 1841. The affidavit of loss states that the original certificate was issued to him (affiant), and that he delivered it to Charles Chamberlain to be by him located, but that it was lost before being located. Chamberlain sued out the duplicate, had it when he died, and it was sold by his administrator by order of the Probate Court to one Daws, August 29, 1851, who in 1852 conveyed it to W. R. Baker, who conveyed the land to plaintiff in 1882. The patent issued in 1861, and the Comptroller's rolls show that W. R. Baker paid taxes on the land from 1864 to 1880 inclusive, and also in 1882. The evidence shows that the transfer and the certificate came regularly from Chamberlain to the plaintiff. There is no evidence of any claim by Evans, of Anderson County, of the certificate or the land, and though he testifies that he paid taxes on the land a few years the rolls of the Comptroller do not disclose the fact, and the assessments made upon his property in evidence do not show that he rendered the land. He testifies that he supposes the certificate was given to him because of services rendered in the war with Mexico; that he served under Neil; could not remember the name of the brigade, regiment, or company. In his sworn application for veteran donation certificate, 28th December, 1882, he stated that he served in the Texas army in the war with Mexico from the 10th of June, 1836, to November 1, 1837, in Captain Heard's company and awhile in Captain Ingram's, and was with Colonel Sherman for awhile. The muster rolls on file in the General Land office do not show that he was a member of any of these commands, though it is known that these rolls are made up from secondary evidence, the originals having been destroyed by fire in 185—.

In his application for a pension on May 6, 1883, he stated under oath that he had conveyed no property within the preceding twelve months, when it is a fact that his deed to McCamant, Tyler, and Turner is dated only eight days before, to-wit, on the 28th day of April, 1883.

He testified by deposition in the court below that he was the identical person to whom the certificate issued; that he never sold it; never sold any certificate to Chamberlain, and did not make the transfer in evidence. There was other proof tending to identify him as the person named in the certificate, and were it our province to decide the question under the evidence as it is presented to us we would be inclined to say that he was the man to whom the certificate issued. We need not, however, pass upon this question, because the court below concluded that if he were the man, he executed the transfer to Chamberlain. If the court below discarded the testimony of Evans as unworthy of credit, as it seems he must have done, either because his memory was unreliable or because he purposely misstated the facts, then there is nothing to impeach the transfer which the court decided he had made, while

there are circumstances indicating its genuineness.    There was no plea attacking the instrument and no objection to its introduction in evidence because not proved.    We think it was in the province of the court under the evidence to hold that it was genuine, and was the act of William T. Evans, under whom defendants claimed.    This holding will result in sustaining the recovery of plaintiff unless there was error in other matters influencing such a conclusion by the court.

Appellants complain that there was error in sustaining the objection of plaintiff's counsel to the answer of D. J. Collins to an interrogatory propounded by defendants, which answer was as follows:    "From the knowledge I have of William T. Evans I believe he was the identical person he represented himself to be."    This answer was inadmissible; it is an opinion, and it was one of the facts in issue and should have been left to the court upon all the facts in proof.    The witness' opinion was not admissible, but had it been, the ruling is of no importance and the error is obviated by the conclusion reached by the court that if the William T. Evans referred to was the identical person to whom the certificate was granted still he executed the transfer to Chamberlain.

The eighth assignment of error should be noticed.    It is that the court erred in overruling defendants' objections to the certificate of the Comptroller of payment of taxes on the land by Baker from 1864 to 1882 inclusive; the certificate of the Comptroller of the assessment of the property of Wm. T. Evans, of Anderson County, for the years 1876, 1879, 1881, and 1883 (in which the land in controversy was not listed); the certified copies of the muster roll from the General Land Office of return made by Colonel J. C. Neil of the men remaining in the garrison of Bexar when he left; of the muster roll of Captain Heard's company; of the muster roll of Captain Ingram's company, and muster roll of Colonel Sherman's regiment, all of which were objected to because irrelevant.

The Comptroller's certificates were admissible to show acts of ownership and claim to the land, and to contradict the witness Evans in his statement that he paid the taxes on the land four or five years.    The fact that he had not paid taxes on the land aided the conclusion of the court that Evans had sold the certificate to Chamberlain.    We think the muster rolls were also admissible.    The witness Evans testified that the certificate was as he supposed granted to him because of services rendered by him in the war with Mexico, though he said he did not know.    He testified that he was a soldier in the revolution and served under Neil, but could not remember the name of his brigade, regiment, or company.    In his application for a veteran land certificate offered in evidence by defendants on the question of identity the certificate of the Comptroller shows that W. T. Evans, of Anderson County, was enrolled as a pensioner for services in the army of 1836, and his applica-

tion for a veteran land certificate made in December, 1882, under oath, that he was a soldier and actually rendered military service in the army subsequent to the commencement of the revolution in 1835, and prior to January 1, 1837. This application shows that he served in Captain Heard's company, in Captain Ingram's for awhile, and with Colonel Sherman a part of the time. W. T. Evans' name does not appear upon any of the muster rolls of these officers. We think the evidence was relevant and pertinent to the issue of identity, and as being in rebuttal of defendants' testimony upon the same subject. Hickman v. Gillum, 66 Texas, 314.

Appellants contend that there was error in the finding that they had actual and constructive notice of plaintiff's title when they purchased and were not innocent purchasers. It was in proof that McCamant was informed of Baker's claim to the land long before his purchase. The plaintiff testified also that "McCamant and Stewart were living on the land when I bought it. They did not move off. Stewart came to me and said that he had no place to move to and I told him he could stay there that winter. I told McCamant that I had bought the land and wanted possession of it. He said that his family was unwell and he wanted to stay there until next spring, when he would move."

It would be wholly immaterial whether the parties admitted the title of Roberts to be good or not; the only question is, did they know he claimed to be the owner of it? If they did, it would be notice of such title as he had.

But in addition to this all the parties are concluded as to notice by the fact that at the time of their purchase one T. F. Scott was on the land holding it as the tenant of Roberts, and had been so holding for a long time prior thereto as the tenant of Baker and Roberts, and was still so holding it at the time of the trial. All the parties, whether they had actual notice of Baker's and Roberts' title or not, were bound to know the character of Scott's holding, and such being the fact they can not be innocent purchasers. When he (Scott) first went on the land in 1879 he did not know who owned it, but by correspondence with Taylor & Surrat, of Waco, learned that it belonged to W. R. Baker. There were a number of squatters on it, and by advice of Taylor & Surrat he had it surveyed for Baker. This was about the 5th day of August, 1879. He caused the survey to be made for the purpose of taking possession for Baker, and he says that from that time to the present he has been holding the possession of the same as Baker's tenant up to the time the latter sold to Roberts, and has been holding the same for Roberts since his purchase.

In January, 1880, he wrote direct to Baker telling him about surveying the land, and he ratified and approved everything he (Scott) had done, and authorized him to manage and control the land. "He

also gave me," said the witness, "the right to purchase one hundred acres, or the whole or so much of the tract as I desired. Mr. Roberts also gave me the right to purchase what I desired of the land; there is, however, no written agreement. I have never had anything but a right to purchase. My intention has always been since I had the survey made to hold the land first for Baker and then for Roberts. * * * Baker afterward sold the entire tract to Roberts, and I am now in possession under Roberts and have been holding under him since his purchase from Baker. There were several parties living on the land when I went there in 1879. I never ordered any person off the land. Several persons besides myself have lived on the land all the time I have been living there." There were a number of houses on the property at old Fort Phantom Hill, which was on the land, but it does not appear that any of the persons occupying the houses claimed any of the property. The possession of Scott was the possession of the owners Baker and Roberts, and put defendants upon notice of their rights.

Thus we are forced to the conclusion that plaintiff has a good title to the land through the transfer of Wm. T. Evans to Charles Chamberlain of which defendants had, some of them actual and all of them constructive, notice at the time of their purchase. The court below so found. It is therefore unnecessary to consider his title under the three years statute of limitation or under other proof, or the supposed errors committed by the court in reference to such other titles become unimportant and immaterial.

It will be proper to notice some other assignments of error upon points incidental to the conclusion reached by the court below. It is contended that the court below erred in admitting in evidence over the objections of defendants the certified copy of the probate proceedings of the County Court of Harris County in the matter of the estate of Chas. Chamberlain, deceased, on the ground that said transcript did not show on its face that said court had ever acquired jurisdiction over said estate, in this, that it did not appear from said transcript that any debts existed against said estate nor that more than four years had not elapsed after the death of said Charles Chamberlain and before administration was granted on his estate.

The plaintiff read in evidence the order of the court appointing Gilbert Brooks administrator of the estate of Chamberlain, the inventory of the estate, the order to sell the W. T. Evans certificate to raise an allowance for the widow fixed by the court in lieu of a homestead and year's allowance, report of sale by the administrator, order confirming the sale, and deed of the administrator in conformity therewith to Daws. The defendants offered a more complete transcript of the probate proceedings. The application for letters by Gilbert Brooks sets up that Chas. Chamberlain died intestate about two years before the filing of the application in Louisiana "as applicant understands and be-

lieves;" that his widow and child then resided in Harris County; that the applicant had been requested by the heirs to administer the estate, and that administration was necessary to take charge of the property of the estate and make it available to the creditors and heirs. It was also alleged that the principal portion of his real estate was situated in Harris County. The inventory shows that an undivided half of a third of a league of land belonging to the estate was situated in Harris County.

The record does not show that there were debts against the estate, nor that there were not. Courts would not be authorized to presume in this case that there were no debts against the estate as was done in the case of Duncan v. Veal, 49 Texas, 603, where letters were granted fourteen years after the death of the person whose estate was put in administration. In the case before us the petition incidentally alleges that there were debts, and the lapse of time had not been sufficient to authorize the inference that debts were barred by the statute of limitations. This assignment of error should not be sustained.

Appellants also complain that the court erred in sustaining objections of plaintiff to the testimony of witness T. F. Scott as contained in the statement of facts on a former appeal of this cause, and the fourth paragraph of the charge of the court on the former trial offered by defendants to show that witness Scott testified differently on the former trial from his testimony on the last trial.

The statement of facts referred to was made up by the court, the parties having failed to agree. The charge of the court offered in evidence submitted an issue based apparently on facts in contradiction to the evidence of Scott on the last trial as to his possession for Baker and Roberts.

A witness may be impeached by showing that he testified differently on a former trial when a proper predicate is laid, but it would be unjust to a witness to allow a statement of facts to be used for such a purpose, whether it was agreed to by counsel or made up by the court. The charge of the court on a former trial can not be used to impeach a witness. These principles are too evident to require discussion. The assignment of error can not be sustained.

We conclude that the judgment of the court below is supported by the evidence, and that it ought to be affirmed.

*Affirmed.*

Adopted February 17, 1891.

## ON REHEARING.

*Charles I. Evans* argued a motion for rehearing, citing: Turnipseed v. Cunningham (Ala.), 50 Am. Dec., 190; Poindexter v. McCannon, 18 Am. Dec., 591; Fowler v. Stoneum, 11 Texas, 480; Jones on Mortgages,

secs. 258, 279; Weathersley v. Weathersley, 90 Am. Dec., 344; Edrington v. Harper, 20 Id., 145; Kerr v. Gilmore, 6 Watts, 408.

GAINES, ASSOCIATE JUSTICE.—A closer scrutiny of the instrument executed by William T. Evans to Charles Chamberlain, dated June 11, 1841, satisfies us that we were in error in holding that it was a conditional sale and not a mortgage. It is in the usual form of a mortgage. It consists of a conveyance of the certificate and the land to be located thereunder, coupled with a condition of defeasance. The conditions to be performed in order to defeat the conveyance are, first, that the grantor shall convey unto the grantee one-third of the land, to be located within three months from the time when the patent should issue, and should within twelve months repay to him the sum of $250. "The usual proviso in a legal mortgage is that upon the payment of the debt or the performance of the duty named 'then this deed shall be void.' * * * If it appear from the whole instrument that it was intended to be a security for the payment of a debt or the performance of a duty it is a mortgage, although there be no express provision that upon the fulfillment of the condition the deed shall be void." Jones on Mortgages, sec. 242. In the instrument under consideration there is such an express provision and there is also a duty to be performed, namely, the grantee is to execute to the grantor a deed to one-third of the land within a certain time after the patent shall issue. Was there not also a debt to be paid? We have nothing to guide us in determining the question but the face of the instrument itself. At this late day it is not to be expected that the facts accompanying the transaction could be proved. If the provision concerning the repayment of the money had been for $250 merely, it would not necessarily have indicated the existence of a debt. But it is stipulated in effect that if the money is not repaid within the period of twelve months from the time the patent should issue it shall bear interest; and this provision evinces that the instrument was not intended to evidence a sale which was to become absolute in the event the grantee failed to pay the money within the twelve months named, but a mortgage to secure, in addition to a conveyance of a third interest in the land, the payment of a debt which might continue to exist and should begin to bear interest after that period had elapsed. The fact that the money which is to be paid is to bear interest is always a circumstance which indicates the existence of a debt and hence a mortgage; and we think the inference of a mortgage becomes almost conclusive when it is expressly stipulated that the sum to be paid is to bear interest after the day on which the condition is to be performed by the payment of the money. The fact also that at the time the instrument under consideration was executed the grantor executed to the grantee a power of attorney to procure in his name the duplicate certificate and the patent to the land, tends to show

that instead of a sale a mere lien upon the certificate and the land to be located thereunder was intended. If the purpose of the parties was to make a sale of the certificate defeasible upon conditions which were not to happen until the patent had issued, no power of attorney was necessary to enable the purchaser to act. But perhaps but little importance should be attached to this circumstance, because the practice in these matters was not settled and we do not know what authority may have been deemed necessary at that early day.

In doubtful cases the courts incline to hold a conveyance a mortgage rather than a conditional sale; and we think the court below erred in not so holding the instrument under consideration. For this error the judgment must be reversed. As to the other points raised by the motion for a rehearing we adhere to the rulings announced in the former opinion.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered March 20, 1891.