### GALVESTON, HOUSTON & NORTHERN RAILWAY v. G. A. NEWPORT.

#### Decided October 19, 1901.

**1.—Railways—Negligence—Defective Appliances.**

Evidence held sufficient to authorize a verdict finding, in effect, that a railway company had negligently furnished an employe engaged in tending a drawbridge with a wrench for turning it defective because of insufficient strength.

**2.—Evidence—Cross-Examination.**

Where a witness for the defendant company had testified that the implement alleged to be defective was not broken, but was perfectly sound, and that its use was continued after the injury to plaintiff, it was proper, on cross-examination, to allow him to be asked how long it was used by the company after the accident before getting a new one.

**3.—Same.**

Plaintiff having testified that it was necessary to use a rope in starting the drawbridge, because it was difficult to get it off its bearings, and a witness for defendant having denied that the rope had been so used, and also that the bridge was difficult on its bearings, it was competent for plaintiff to show, on cross-examination of the witness, that plaintiff had complained to him that it was difficult to get the bridge off its bearings.

**4.—Same—Rebuttal.**

Where defendant company's witness had testified that a certain other drawbridge was about as heavy as the one in issue and was operated by a wrench of the same kind as the one the breaking of which caused plaintiff's injuries, it was proper for plaintiff to show in rebuttal that the wrench used by him was not as strong nor as well fitted to its socket as such other one.

**5.—Charge of Court—Defective Appliance.**

Where plaintiff's petition alleged the defect in the wrench, the breaking of which caused his injury, to be that it was defective, insufficient and inadequate in that it was improper in size and too small for the material out of which it was made, and was an improper fit for the shaft in which it operated, it was. proper for the court to charge the jury that they should consider certain testimony admitted as to a weld or flaw in the wrench and as to a defect of the sockets only in determining whether or not the wrench was of proper or improper size and too small for the material out of which it was made; and such charge was not on the weight of evidence.

**6.—Same—Burden of Proof.**

Where the court charged upon the burden of proof in the abstract, but in other parts of the charge clearly and fully pointed out the facts necessary to a recovery and the matters of defense, there was no reversible erorr.

**7.—Same—Requested Instruction.**

Where there is no positive error in the charge, the refusal of a special instruction not correct in itself is not error.

**8.—Same—Assumed Risk—Knowledge of Defects.**

See charge of court in an action for personal injury by an inexperienced railroad employe, engaged as tender of a drawbridge, as to risks assumed by him and as to his knowledge of defects which is held not objectionable in view of the facts.

**9.—Same.**

Where the charge clearly submitted the issue upon which plaintiff was entitled to recover and restricted his right of recovery to the defects alleged in the wrench he was using, there was no error in refusing to charge, in effect, that he could not recover if the injury was caused by other defects.

**10.—Verdict for Personal Injury Not Excessive.**

Verdict for $15,000 held not excessive in the case of a railway drawbridge tender, 27 years old, earning $50 per month, for injuries causing the loss of one ·foot (amputated), and the breaking of the other one.

**11.—New Trial—Diligence.**

An application for a new trial on account of newly discovered testimony is properly refused where it does not show that proper diligence was used to discover the testimony and that it was material.

Appeal from Harris.  Tried below before Hon. Charles E. Ashe.

*Baker, Botts, Baker & Lovett* and *A. L. Jackson,* for appellant.

*Ewing & Ring,* for appellee.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellee, P. A. Newport, against the Galveston, Houston & Northern Railway Company, the appellant, to recover damages for personal injuries received by him while at work in the performance of his duties as tender of a drawbridge in the line of appellant's railway, resulting, as alleged, from the negligence of the appellant in failing to furnish reasonably safe appliances and to maintain a reasonably safe place for the work. A trial by jury resulted in a verdict and judgment in favor of the appellee for the sum of $15,000.  The injuries were received April 5, 1900. Appellee was at work on that day in the employment of the appellant as tender of a drawbridge over Buffalo Bayou, on the line of the railway. He had been in the employment of the company tending this bridge since June, 1899.  His duties were to open and close the bridge and to watch for and signal trains.  He had an assistant furnished by the company. The bridge was after the usual manner of such structures.  The draw was turned by the application of power to a vertical shaft in the center, with cogs communicating the force to other machinery; the power was applied to the shaft by means of a socket wrench and lever; the wrench fitting over the head of the shaft squared for the purpose, and the lever applied to the top of the wrench.  The head of the shaft upon which the wrench was fitted was 2 inches square at the top, and 2 1-16 inches square at the shoulder; the socket of the wrench was 2⅛ inches square· at the top, 2 3-16 inches square at the bottom, and 3¼ inches deep. The lever was 13 feet long, and was applied to the top of the wrench at the middle, giving a leverage of of 6½ feet at each end.  When in line with the bridge, the draw was fastened upon its bearings by a latch key, and to open the draw it was necessary to raise the latch key, put the wrench upon the shaft, apply the lever to the wrench, and push against the lever.  The appliances furnished by the company for opening the

draw were the socket wrench or key, as it was sometimes called, and the lever. Heavy planks were laid upon the bridge as a flooring. Spaces were left between them so as to enable the man pushing the lever to brace himself by placing his feet against the edges of the planks.

For about three months prior to the time when appellee was injured he had been using, in addition to the socket wrench and lever, a rope to aid him in opening and closing the draw. He would tie one end of the rope to an upright of the bridge, and attach the other to the end of the lever, and as the lever moved would take up the slack in the rope. This rope was not furnished by the company as an appliance for moving the draw, but it was shown that its use was necessary and customary when the bridge was hard on its bearings, as the bridge in question appeared to be, and to prevent the wind from forcing the draw against boats passing through. It was shown that the foreman of appellant, who had charge of the bridge, knew of the use of the rope, and did not object to it. At the time of the accident appellee's assistant was not present. He had voluntirily absented himself. It became necessary to open the bridge to let a boat pass, and the appellee proceeded to move the draw in the usual manner. He raised the latch key, pinched the draw off its bearings, applied the socket wrench and lever, and used the rope as above indicated. The draw was opened and the boat passed through, but when the appellee attempted to close it, the socket wrench broke, causing the appellee to fall and the draw to swing rapidly around by the force of the wind. One of eppellee's feet became fastened in a space between the flooring planks, and the other leg was caught by the rope suddenly winding around the shaft and cut and broken so that it had to be amputated, and the foot of the other leg was broken. The testimony in behalf of the appellee tended to show that the injuries were caused by the negligenec of appellant in furnishing a defective socket wrench; that the wrench was not reasonably safe, and the socket cracked and broke because it was of insufficient strength for the service on account of the material out of which it was made and its improperly fitting on the head of the shaft.

This testimony is sufficient to support the verdict of the jury that the appellant was negligent in furnishing the appellee with a defective socket wrench to turn the draw, and the finding of the jury is adopted by this court. We further conclude that the appellee was injured without negligence on his part, and sustained damages to amount found by the jury. He was 27 years of age, in good health, and was earning $50 a month. One foot was broken. and still pained him at the time of the trial, nine months after the accident. A leg was broken and amputated below the knee. He was in the hospital sixty-five days, at a charge of $1 a day. His doctor's bill was $150. Appellee was an ordinary laborer and understood the work of turning the draw and knew the size and working of the socket wrench, but did not have the expert knowledge necessary for him to know the insufficiency in strength of the socket wrench for the work, and had no knowledge of its defectiveness on ac-

count of size, or of the attendant risks to which he was subjected by the use of it.

Appellant has assigned errors upon the action of the court in the admission of evidence and in the giving and refusing of instructions to the jury, as well as the refusal to grant a new trial because the verdict was contrary to the evidence and on account of newly discovered evidence. The judgment is also complained of as excessive in amount. We state, as briefly as we can, the conclusions of the court upon the several assignments of error.

1. While it is true that, as a rule, it is not competent to show that conditions alleged to have caused the injury have since been altered or remedied, yet the testimony of the witness Roberts as to how long the socket wrench was used after the accident before getting a new one, was pertinent and properly received. The testimony was brought out on cross-examination by appellee's counsel after the witness had testified that the wrench was not broken, but perfectly sound, and that they continued to use it after the injury, and was admissible to contradict his statement made on direct examination that the wrench was sound. Railway v. Johnson, 78 Texas, 536; Fordyce v. Withers, 1 Texas Civ. App., 540; Fordyce v. Moore, 22 S. W. Rep., 235.

2. The second assignment of error is of the same nature as the foregoing. It complains of the action of the court in allowing the appellee to elicit from the appellant's witness, Roberts, on cross-examination, evidence that the appellee complained to him that it was difficult to get the draw off its bearings, and the refusal of the court to give a special instruction to the jury at appellant's request to disregard such evidence, as no complaint was made in the petition of any defect on that account. The appellee had testified without objection that it was customary and necessary to use a rope when starting the bridge, because it was difficult to get it off its bearings, and that the rope had been used repeatedly for this purpose in the presence of the witness. The statement that the rope had been used for this purpose was denied by Roberts, and he also denied that the bridge was difficult on its bearings. In order for the appellee to justify the use of the rope, it devolved upon him to show that it was usual and necessary, and was acquiesced in by the appellant, and the difficulty of the bridge on its bearings as a cause for the use of the rope became a subject of inquiry; hence, as in the first assignment, the evidence was admissible to weaken the testimony of the witness on his direct examination that there was no difficulty in getting the bridge off its bearings. The requested instruction was sufficiently covered in the general charge of the court, which directed the jury to disregard all evidence concerning the appellant's liability other than such as pertained to the socket wrench or flooring. The effect would also have probably been misleading.

3. Evidence of the relative strength of the socket wrench in question and that of the one in use at the bridge at Hill street was properly received, because it was in rebuttal of evidence introduced by the ap-

pellant that the Hill street bridge was about as heavy as the bridge upon which the appellee was working and was operated by the same kind of a wrench. It was competent for the appellee to show that by reason of the fact that the socket of the wrench used by him was not so deep as the one in use at the Hill street bridge, as well as of the fact that it had a weld in the socket, it was not so strong as that wrench, and the evidence would tend to show that it was defective for the want of strength as alleged. Since the evidence was competent, and the court in the charge to the jury carefully restricted the liability of the appellant to the defects alleged in the petition, there was no error in refusing the special instructions as complained of in the sixth and seventh assignments of error.

4. The sixteenth paragraph of the charge is as follows: "The only particulars alleged by plaintiff in which he claims the socket wrench was defective, insufficient, or inadequate, are stated in his pleadings to be, that the wrench was improper in size and too small for the material out of which it was made, and was an improper fit for the shaft on which it directly operated; and in determining plaintiff's right to recovery, the inquiry as to such alleged defectiveness, inadequacy, or insufficiency, must be confined to the particular defects as alleged. Therefore the jury will consider the testimony admitted as to weld or flaw in the wrench, as well as that admitted as to the depth of the socket, only as bearing on the question as to whether or not the wrench was of proper or improper size, and too small for the material out of which made, considering the use to which it was put, and will consider the same for no other purpose."

This charge is complained of under the fifth assignment of error as upon the weight of the evidence. Since the testimony was competent for the purposes above stated, but not evidence of defects for which the appellant would be liable, it was proper for the court to instruct the jury as to the purpose for which it could be considered, and such instruction was not subject to the objection made to it. Giddings v. Baker, 80 Texas, 316.

5. The eighth assignment of error can not be sustained. It complains of the court's charge upon the burden of proof, and of the refusal of the court to give a special charge requested by the appellant. The court's charge is not complained of as erroneous, but as abstract, and as calculated to mislead the jury. But as other parts of the charge very clearly and fully pointed out the facts necessary for a recovery and the matters of defense, there can be no objection to the general instruction upon the burden of proof. Besides, the requested instruction was in itself perhaps objectionable in its definition of proximate cause. The court was asked to instruct the jury that, in order to entitle the plaintiff to recover, they should find that one or more of the alleged defects existed, and directly and immediately caused the injury; the objection being to the use of the words "directly" and "immediately." There

being 'no positive error in the court's charge, the refusal of a special instruction, not correct in itself, can not be held error.

6.   The sixth paragraph of the court's charge reads as follows: "An employe, in law, assumes the risks of dangers ordinarily incident to his service, but this dies not include such increased risks as may result from failure of the employer to exercise ordinary care to furnish or supply instrumentalities or appliances for the service that are reasonably safe, unless the employe knows of such failure and the attendant risks, or by the exercise of ordinary care in the discharge of his own duty would have acquired such knowledge; and until he has such knowledge, or would by ordinary care in discharge of his own duty have acquired such knowledge, he has a right to rely upon the assumption that such instrumentalities or appliances with which he is called upon to work are reasonably safe for use in the manner and for the purpose intended."

This charge is objected to as (1) upon the weight of the evidence; and (2) because the employe who knows, or by the exercise of ordinary care would know, that the appliances used by him are not reasonably safe, is held in law to have assumed the risk of injury therefrom, and it is not necessary to prove that he knew, or by the exercise of ordinary care would have known, the *attendant risks*. Appellee was a common laborer. He had no expert knowledge by which he could know that there was any defect in the socket wrench. The evidence adduced upon the trial by expert witnesses on both sides showed that the strength of the wrench, and its suitableness for the purpose for which it was used, depended upon scientific principles of which the appellee was profoundly ignorant; and although the wrench was in daily use by him, and he could see its size and structure, he knew nothing of the force it would withstand, or of its sufficiency for the work in hand. As appeared from the evidence, he had never been employed at any other bridge, and did not even have the experience of any contrast in the structure of such wrenches. We are therefore of the opinion that the language of the charge was not objectionable in view of the facts, and that the charge was even more favorable than the appellant had a right to expect, since the evidence failed to show that the appellee did know, or by the exercise of ordinary care could have known, of any defect in the wrench. It was not error to refuse the instructions set out in the tenth assignment of error, and to overrule the motion for a new trial, as complained of in said assignment, all of which are predicated upon the knowledge of the appellee of the risk in the use of the wrench.

7.   The evidence was sufficient to support the finding of the jury upon the issue that the use of the rope was customary and necessary in the service, acquiesced in by the appellant, and was not a negligent act on the part of the appellee. Such being the case, the eleventh assignment of error is not sustained. It complains of the action of the court in refusing special instructions charging appellee with the assumption of the risk of any injury resulting from the use of the rope as an appliance

not furnished or designed by the appellant to be used in the service, and to find for the appellant.

8. There can be no error predicated upon the refusal of special charges numbers 12 and 16, set out in the twelfth assignment of error, because there was no evidence to show that the appellee was guilty of contributory negligence in placing his foot in the crack of the flooring. Nor was the issue made by the answer.

9. The fourteenth assignment of error is as follows: "The court erred in refusing to give special charge number 19, requested by defendant, which reads as follows: 'You are instructed that plaintiff makes no complaint in his pleadings with reference to any defect in the shaft of the defendant's bridge upon which the socket wrench was designed to be placed and operated in opening and closing defendant's bridge. Therefore, even if you should find from the evidence that the said socket wrench gave way while the plaintiff was pushing upon the lever of said bridge, and thereby caused the plaintiff to receive the injuries alleged, yet if you further find from the evidence that said socket wrench in itself was reasonably safe for use in the operation of said drawbridge, but that the said shaft was defective on account of having been worn or rounded at the corners thereof, and that such defects, if any, in the said shaft was the cause of said socket wrench giving away on the occasion of plaintiff's injury, then you will disregard such defective shaft in so far as the question of defendant's liability is concerned, and will return your verdict in favor of defendant.' " There was no error in refusing this charge, because the court's charge clearly submitted the issue upon which the appellee would be entitled to recover, and restricted his right to recover to the defects alleged. Under the charge of the court and the verdict the jury must necessarily have found that the accident was the result of a defective wrench.

10. The judgment is for a large amount, but we do not think that we should set it aside as excessive.

11. Appellee objects to the consideration of the assignment of error based upon the refusal of the court to grant a new trial upon the ground of newly discovered evidence. It is sufficient to say, however, that the application does not show that proper diligence was used to discover the testimony or that it was material.

The judgment of the court below will be affirmed.

*Affirmed.*

Writ of error refused.