**SAMMONS et al. v. BRUNSON.**

**No. 2375.**

Court of Civil Appeals of Texas. El Paso.
Feb. 13, 1930.

Rehearing Denied March 12, 1930.

W. J. Cunningham, J. M. Chandler, and Sayles & Sayles, all of Abilene, and Clem Calhoun, of Borger, for plaintiffs in error.

Henry Russell and Wm. L. Kerr, both of Pecos, for defendant in error.

PELPHREY, C. J.

On August 30, 1924, W. H. Brunson and D. W. Brunson by general warranty deed conveyed about 15,000 acres of land in Loving and Winkler counties to T. J. Barnes, their nephew; the deed reciting a consideration of $30,000.

On the 10th day of October, 1924, Barnes and wife executed a deed of trust on the same land to J. N. Brooker, as trustee for Milano Land & Garden Company, a corporation, securing an indebtedness of $7,500.

February 26, 1925, Barnes executed a warranty deed to the property to J. S. McCall. By agreement this deed was to be placed in escrow in the F. & M. National Bank of Fort Worth, Tex., to secure a loan of $500 made by McCall to Barnes due on May 27, 1925.

McCall, on January 4, 1927, executed a quitclaim deed to the property to A. J. Sammons for a consideration of $583.50, and Sammons thereafter conveyed Jules E. Ehlers and Robert C. Westbrook an undivided one-half interest in the oil, gas, and other minerals in lot 57, section 11, block C–24, and lot 4, section 20, block C–25, and to W. J. Cunningham and J. M. Chandler an undivided one-third interest in the property.

On June 15, 1925, Barnes conveyed the property by warranty deed to Glenn S. Brunson, defendant in error herein.

On April 27, 1927, Glenn S. Brunson filed his original petition in trespass to try title and praying that his title to the land be quieted, that the deed from Barnes to McCall be declared a mortgage, and that the cloud cast upon his title by said deed be removed.

The case went to trial upon defendant in error's third amended petition, which alleged, in substance, that he was the owner of the land in controversy; that on August 30, 1924, W. H. and D. W. Brunson were the owners thereof, and that on said date they and their wives executed a deed of conveyance of the land to T. J. Barnes; that the deed, while it appeared to convey the legal title to Barnes, was in fact executed as part of an agreement between D. W. and W. H. Brunson and Barnes by the terms of which the legal title was to be conveyed to Barnes to be held in trust by him for D. W. and W. H. Brunson, who were at all times the owners of said property, and that Barnes never owned any interest in the land except as trustee for the Brunsons; that under the agreement Barnes was to hold said title in trust for the Brunsons until such time as they required the reconveyance thereof to themselves or to some other person; that after the execution of the trust agreement, the Brunsons were at all times in actual, open, and notorious possession of the land, and that neither Barnes nor any of the other defendants have ever been in possession of

any part thereof; that the possession of the Brunsons was never questioned and was never interrupted until the conveyance to defendant in error, who thereupon took and has held possession from said date; that by virtue of such possession, plaintiffs in error were charged with notice of defendant in error's rights to the land; that Barnes, in violation of his duty as trustee, and without the knowledge or consent of the Brunsons, on February 26, 1925, secured from J. S. McCall a loan of $500, and to secure said debt delivered to McCall a warranty deed conveying to McCall all of the land in controversy except two sections; that contemporaneous with the execution of said deed, Barnes executed and delivered to McCall his note for $500; that while said deed was in the form of a conveyance, it was, in fact, executed to secure said debt; that in any event said deed was void because Barnes had no authority to execute same, the real title at said time being in the Brunsons and the deed being made without their consent, McCall knowing of their interest; that the land consisted of about 15,000 acres of the value of $25,000; that the deed from Barnes to McCall was never recorded until January 14, 1927, when defendant in error and his predecessors in title for the first time learned of such conveyance; that defendant in error is informed and believes that Barnes represented to McCall that the loan made to him was for the Brunsons, and that McCall would not have made the loan to Barnes but for such representation, which was false, Barnes having appropriated to himself the proceeds of said loan; that on or about January 4, 1927, Barnes requested McCall to execute a quitclaim deed to plaintiff in error Sammons, and attach to same the note made by him to McCall and a draft for the amount due on said note, and represented to McCall that the purpose of said deed was to release the lien created on the land, but that the Brunsons and defendant in error knew nothing of said request or the outstanding deed; that McCall, believing that he was acting at the request of the Brunsons, for the purpose of releasing the lien on the land, executed a deed to Sammons, marked the note paid, and sent same with draft attached to plaintiffs in error, who recorded same on January 14, 1927; that the consideration for the deed from McCall to Sammons and for the cancellation of the note was the amount due on the note or $583.53; that said deed being a quitclaim deed charged Sammons and the other plaintiffs in error with notice of defendant in error's rights; that on November 4, 1926, Barnes brought suit against defendant in error Glenn S. Brunson and W. H. Brunson, claiming title to an interest in the land here in controversy; that defendant in error filed cross-action to quiet his title and recovered judgment accordingly; that Sammons and other plaintiffs in error were present at the trial of said cause, heard the testimony therein, and secured a statement of the facts proven therein, wherein Barnes, upon cross-examination, testified that the deed given by him to McCall was executed for the purpose of securing a debt and that these facts were known to plaintiffs in error at the time of the execution of the deed from McCall to Sammons; that the consideration for the deed from Barnes to McCall was not a valuable or sufficient one and was so inadequate as to put McCall and all parties claiming under him upon notice of defendant in error's rights and of defects in the title.

Plaintiffs in error Sammons and Cunningham answered (their answer being adopted by Chandler) by general demurrer, by special exceptions to the allegations in defendant in error's petition attempting to ingraft a parol trust upon the deed executed by the Brunsons to Barnes, by special exceptions to the allegations that the deed from Barnes to McCall was executed as a mortgage, by general denial, by plea of not guilty, and by cross-action wherein they alleged an action of trespass to try title, and answering specially alleged that on February 26, 1925, T. J. Barnes held and claimed the land in fee simple by virtue of the deed from the Brunsons to him; that on said date for a valuable and sufficient consideration he conveyed said land to McCall, vesting in McCall all his right, title, and interest; that defendant in error had no claim whatsoever in said land at said time; that on January 4, 1927, McCall, for a valuable consideration, conveyed all of said property to plaintiff in error Sammons; that on March 11, 1927, Sammons, for a valuable consideration, conveyed a one-third interest to Cunningham and Chandler; that on June 15, 1925, long subsequent to the execution of the deed from Barnes to McCall, Barnes executed the deed to defendant in error, purporting to convey to him the land; that the purported deed to defendant in error was executed at the special instance and request of W. H. Brunson, who was acting for himself and as agent of defendant in error; that Barnes, W. H. Brunson, and defendant in error fraudulently conspired together for the purpose of defrauding McCall out of the land, and for the purpose of defeating the conveyance from Barnes to McCall, which had not been recorded, by executing the purported deed from Barnes to defendant in error, filing same for record, thereby making it appear that defendant in error was a bona fide purchaser for a valuable consideration without notice, when in fact said deed was wholly without consideration and fraudulently executed; that both Barnes and W. H. Brunson had parted with all their title in said land prior to the execution of the purported deed to a defendant in error, and therefore no title was conveyed

by said deed and it should be canceled and the cloud created thereby should be removed from plaintiffs in error's title; that during the year 1925 defendant in error caused the land to be forfeited and reclassified and revalued by the Commissioner of the General Land Office; that he repurchased same under the provisions of chapter 94 of the Acts of the 39th Legislature, and that by said repurchase he is holding the title to said land in trust for plaintiffs in error; that the deed from Barnes to McCall was executed together with an escrow agreement and a note for $500, and all were placed in escrow with the F. & M. National Bank of Fort Worth, Tex., to be held by said bank until May 27, 1925, at which time said deed was to become absolute unless Barnes should, on or before said date, redeem the deed by paying the $500; that Barnes did not pay the $500, or redeem the deed, and that the conditional sale became absolute in keeping with the escrow agreement, and McCall was vested with the title to the land as of the date of the execution of the deed; that the consideration of $500 was a valuable and sufficient consideration, in that there was a purchase-money debt in favor of the state of Texas amounting to approximately $45,000, and a further debt of $7,500 owing to the Milano Land & Garden Company.

In the alternative plaintiffs in error alleged that if they were not entitled to the benefits of the reclassification and revaluation of the land by the Land Commissioner, then the defendant in error fraudulently caused said land to be so forfeited, reclassified, revalued, and resold to him, and that the Land Commissioner did not comply with the law, thereby rendering such forfeiture, reclassification, revaluation, and resale null and void.

By way of further cross-action and in the alternative, plaintiffs in error allege that if the deed from Barnes to McCall was in fact a deed of trust or a trust deed to secure the payment of the $500, they are the owners thereof and are subrogated to McCall's rights and are entitled to a foreclosure of such mortgage lien.

Defendant in error answered plaintiffs in error's cross-action by general demurrer, general denial, and specially denied that Barnes was ever his agent, that he ever authorized or directed the execution of the deed to McCall, and further denied that Barnes was ever so authorized by W. H. Brunson; denied that W. H. Brunson was his agent and the allegations of conspiracy and fraud.

A trial to the court was had and judgment rendered quieting the title of defendant in error to the land in controversy and for title and possession of same, and in favor of plaintiffs in error, Chandler, Sammons, and Cunningham, on their cross-action as to the mortgage lien, but refusing to foreclose said

lien by reason of a tender of the amount due on the note having been made by defendant in error; and declaring the money so tendered into court to be their property.

Chandler, Cunningham, and Sammons have prosecuted an appeal from the above judgment to this court.

### Opinion.

Plaintiffs in error's brief contains eighty-nine assignments of error and twenty-six propositions thereunder. We shall not attempt to discuss these various propositions, because we have concluded, after a careful study of the entire record, that the case can be disposed of upon the proper solution of one single question, namely, the construction of the deed from Barnes to McCall.

If that deed conveyed the legal title to McCall, then plaintiffs in error must prevail, while if, as contended by defendant in error, it was given only as security for the loan of $500 by McCall to Barnes, and was not intended to convey the title to the land, then the only right obtained by McCall was to foreclose his lien on the property and he was vested with no title to the land which he could convey.

A deed of conveyance, absolute and unconditional on its face, but intended and understood by the parties to be merely security for the payment of a debt or the performance of some other condition, will be regarded and treated in equity as a mortgage, giving to the parties the relative rights and remedies of mortgagor and mortgagee, and nothing more. 41 C. J. pp. 310, 313; McCamant v. Roberts, 80 Tex. 328, 15 S. W. 580, 1054; Eckford v. Berry, 87 Tex. 415, 28 S. W. 936; Armstrong v. Burkitt (Tex. Civ. App.) 34 S. W. 759. And parol evidence is admissible to show the real purpose of the transaction. Eckford v. Berry, supra.

This being true, then the inquiry in the case before us is whether there is sufficient competent evidence to support the finding of the trial court that the deed from Barnes to McCall was given as security for the payment of the $500.

The trial court's finding as to the effect of the deed to McCall reads: "I find that in violation of said trust agreement and without the knowledge or consent of said W. H. Brunson and D. W. Brunson, on the 26th day of February, 1925, said T. J. Barnes did borrow Five Hundred Dollars ($500.00) from J. S. McCall, and executed to said McCall said deed of conveyance, which he delivered to McCall together with a note for Five Hundred Dollars ($500.00) as evidence of such debt; contemporaneous with the delivery of said deed there was an agreement that said deed was to be deposited in the First National Bank of Fort Worth, Texas, to be held by it for a period of ninety (90) days, and if said

Five Hundred Dollar note was paid within said time said deed was to be destroyed, if not repaid said deed was to become absolute. The purpose of this conveyance on the part of McCall and Barnes was to secure the payment of said Five Hundred Dollars, and it was intended as a mortgage at the time executed, and was so regarded by McCall. Said deed was delivered to McCall and not placed in escrow; I further find that McCall never did record said deed, but at all times considered it a mortgage; but on January 4, 1927, after T. J. Barnes had lost his said suit against Brunson, he requested said McCall to execute a quit claim deed to A. J. Sammons, and attach said note and contract to it, which note had been executed at the time of said loan and had been delivered to McCall. I find that McCall executed such quit claim deed, and attached said deed and note from Barnes to him, and delivered same at the direction of Barnes to A. J. Sammons, which quit claim deed attempted to convey the title to A. J. Sammons."

The deed executed by Barnes to McCall was a warranty deed, and the agreement executed at the same time reads as follows: "The State of Texas, County of Tarrant.

"Know all men by these presents, that we, F. J. Barnes and J. S. McCall have made and entered into the following contract: T. J. Barnes has made a deed herewith filed to several sections and lots of land located in Loving and Winkler County, Texas, to J. S. McCall and has a loan for the sum of five hundred dollars due on the 27th day of May, 1925, and we have placed this deed in escrow with F. & M. National Bank of Fort Worth to be delivered to J. S. McCall if said Barnes does not pay the said note at maturity and the said deed shall become absolute. If Barnes the said note to be left with the said F. & M. National Bank of Fort Worth of five hundred dollars then the said deed shall be delivered back to T. J. *Banres* and become *inoraive* and of no effect."

■ McCall testified that he did not buy the land and did not consider that he paid any consideration for it; that the purpose of the conveyance was to secure a loan of $500 evidenced by a note in that amount, executed by Barnes and payable to him; that the loan was made by him to Barnes upon the representation that he was securing the money for the use of the Brunsons; that Barnes told him the Brunsons, whom he had known years before, were in need of the money and that he could secure the loan with 16 sections of land in Winkler county, and repay the loan in 90 days, with interest; that Barnes secured an abstract for the property, but that he (McCall) did not have the same examined and that he made the loan only because of a desire to accommodate the Brunsons, who had been his customers in West Texas years before; that he never recorded the deed; that he did not record it because it was agreed that it should not be recorded until after 90 days, and that later he learned that the facts had been misrepresented to him and that he did not consider it worth recording; that he executed the deed to Sammons at the request of Barnes and sent it, together with the Barnes note and the deed to him from Barnes, to a bank in Abilene with a draft attached for the amount then due on the note; that he executed the deed to Sammons for the purpose of releasing the land from the lien which he held on it to secure the note; that he had employed a Mr. Smith of Fort Worth to help collect the note; and that through him he received the instructions regarding the execution of the quitclaim deed, and transmitting it together with the other papers to Abilene.

Plaintiffs in error contend that the above testimony was inadmissible, being the declaration of a grantor after he had parted with his title, in disparagement of the deed by which he acquired title.

In other words, that there exists an estoppel by deed.

We cannot agree with such contention. An estoppel by deed only serves to preclude a party to a deed and his privies from asserting as against the other and his privies any right or title in derogation of the deed, 21 C. J. p. 1067, and the rule contended for will not apply to disqualify a party to a deed, when called as a witness by a third party, from testifying to the true facts regarding the transaction, Reeves, et ux. v. Shry, 39 Tex. 634.

■ Having concluded the evidence of McCall to be competent, it naturally follows that there is sufficient evidence to support the above finding of the court to the effect that the deed from Barnes to McCall was given as security for the loan of $500, and conveyed no title to McCall.

This being true, then Sammons acquired no title by the quitclaim deed from McCall and acquired only the right to a foreclosure of the lien, which was all the right ever had by McCall.

The relief of foreclosure was not granted by the trial court because of the tender by defendant in error, but the money tendered was adjudged to be the property of plaintiffs in error.

We have studied the record carefully, and have decided that the above conclusion is decisive of the case and that the other propositions advanced by plaintiffs in error need not be considered.

The judgment is therefore affirmed.