HARGROVE v. FORT WORTH ELEVATORS CO. (No. 7166.)

(Court of Civil Appeals of Texas. San Antonio. May 14, 1924. Rehearing Denied June 11, 1924.)

1. **Appeal and error** ⊚⇒756—**Cumbersome typewritten briefs should be labeled to indicate contents.**

Cumbersome typewritten briefs should at least be labeled on the outside, so as to indicate contents to, court.

2. **Nuisance** ⊚⇒48—**Allegation of damages to trees held indefinite.**

In a suit for damages caused by a nuisance, allegation as to damage to trees held too indefinite to admit testimony in relation thereto.

3. **Nuisance** ⊚⇒50(1)—**Deprivation of pleasure from trees and flowers not element of damages.**

Physical discomfort and annoyance from being deprived, on account of alleged nuisance, of the pleasure derived from trees and flowers is not an element of damages.

4. **Exceptions, bill of** ⊚⇒17—**Bill of exceptions, failing to specify matter sought to be proved by excluded testimony, held defective.**

Bill of exceptions, failing to specify matter sought to be proved by excluded testimony, as to which error was assigned, is defective.

5. **Evidence** ⊚⇒271(1)—**What plaintiff suing for nuisance said about health and feelings inadmissible.**

In suit for damages caused by a nuisance, evidence as to what plaintiff said to witnesses about his health and feelings was inadmissible.

6. **Witnesses** ⊚⇒393(1)—**Inquiry as to testimony given in former suit against different defendant as to cause of nuisance held admissible.**

In a suit for damages caused by a nuisance alleged to be due to accumulation of water and filth, wherein it appeared plaintiff's neighbor previously sued another for the same accumulation, it was permissible to ask plaintiff and his witnesses as to what they swore about it in the prior case, as tending to contradict them

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and show they did not know who created the nuisance.

**7. Nuisance ⊗═49(2)—City ordinance held inadmissible.**

In a suit for damages, a city ordinance defining nuisance was properly excluded, it not being shown that defendant created any nuisance.

**8. Evidence ⊗═512—Elevator company's superintendent held qualified to testify as expert as to degree of precautions taken to prevent nuisance.**

In a suit against a grain elevator company for damages from nuisance alleged to have been caused by accumulation of decayed grain and filthy water flowing from defendant's premises, witness who testified he was defendant's superintendent for over six years, and looked after its physical properties, *held* qualified to testify as an expert that defendant had taken all possible precautions to take care of the water, and that the drains were sufficient for immediate vicinity of defendant's plant.

**9. Trial ⊗═18 — Witnesses ⊗═266 — Trial judge's giving of unsought opinion of law and his cross-examination of witnesses not commendable.**

The action of the trial judge in repeatedly giving his unsought opinion of the law, and in his cross-examination of witnesses, *held* not commendable.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by Robert Hargrove against the Fort Worth 'Elevators Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Sawyers & Ambrose, of Fort Worth, for appellant.

Smith & Smith, of Fort Worth, for appellee.

FLY, C. J. This is a suit instituted by appellant against appellee to recover damages caused by a nuisance created by appellee, which affected the health and comfort of appellant, and rendered his home unfit for use and enjoyment thereby destroying its value as a home, and that such nuisance has also killed his garden and some of his fruit trees. It was alleged that appellee occupies a tract of land in the city of Fort Worth about 200 feet west of appellant's home and elevated above his home, and that appellee has erected thereon large buildings known as elevators, in which large quantities of grain are stored, and has from time to·time dumped large quantities of rotton grain and filthy, ill-smelling water in the street and gutters of East Second street, so that the same would run down and stand in front of appellant's residence, creating a foul, stagnant pool, and only about ·30 feet from appellant's front door; that the pool overflows at times the lot owned by appellant as well as adjoining lots, and the ground is thereby soaked and impregnated with the filthy, bad-smelling refuse, "like that from the swill and filth of a neglected hog pen." Appellant alleged damages in the sum of $5,500. Appellee filed general and special exceptions and a general denial, and, while not disclosing that it had in its original answer impleaded the city of Fort Worth and the Chicago, Rock Island & Gulf Railway Company, it seeks a judgment against them if one should be rendered against it. The city of Fort Worth and the railway company were dismissed from the suit. The cause was tried by a jury on special issues submitted to them, and upon the answers thereto judgment was rendered that appellant take nothing by his suit and pay all costs, except costs of summoning witnesses for appellee and fees of such witnesses, which were taxed against appellee.

[1] This court is confronted with briefs by both parties, each of more than 100 typewritten pages, those of appellant have nothing written or printed on the cover to indicate their nature. If courts are to have cumbersome, typewritten briefs, they should at least be labeled on the outside so as to indicate what they are to the court, thereby obviating some trouble and consumption of time.

The jury found that appellee did not, as alleged between August 23, 1918, and August 23, 1920, cause or permit grain, refuse, or other substances to go from its premises upon or about the property of appellant that appellant was not made sick at those times, nor suffered pain or mental anguish, and suffered no damage as a proximate result of the accumulation of grain, refuse, or other substances on or about his property; that appellant did not with ill will towards appellant cause or permit any grain, refuse, or other substance to leave its premises and go upon those of appellant. The jury also answered that no exemplary damages should be assessed against appellee. We think there is evidence to sustain these findings. Even appellant failed to show satisfactorily by his evidence that the water and filth about his property was caused by appellee, and he was shown by his own testimony on a former occasion to have attributed the nuisance to another agency. Other facts tended to show that ·appellee had used adequate means to prevent a flow from its premises to those of appellant. The water and filth were in Second street, but it was not shown who caused or permitted them to go there. There was testimony tending to show that no nuisance was created and that appellant was not damaged.

The propositions are very vague and·indefinite, but have been considered together with the assignments upon which it is claimed they are based. The first assignment of error complains of the verdict on the ground

that it is not supported by the facts. Our conclusions of fact dispose of it, and it is overruled.

[2] The second assignment of error is overruled. The allegation as to damage to trees was too indefinite to admit testimony as to damage. The allegation was:

"That the ground of plaintiff's lot as well as of adjoining lot has often been soaked with stagnant and filthy water so as to be soggy, and has killed out plaintiff's vegetable garden and some of his trees."

[3, 4] How many fruit trees he had is not shown. Appellant's attorney stated that the evidence excluded as to trees and flowers was not offered to recover their loss but to recover physical discomfort and annoyance caused by not having the pleasure they gave him. Of course that was not an element of damages, and the testimony was properly excluded. No value was placed on trees or vegetables. The jury found that no such damage was inflicted by appellee. The assignment complains of testimony being rejected as to appellant owning fruit trees, which he sought to prove by W. M. Houston. The statement of facts shows that Houston swore that appellant had flowers and three or four peach trees. The bill of exceptions is defective in not stating what appellant expected to prove by the witness.

[5] The evidence as to what appellant said to witnesses about his health and feelings was clearly inadmissible, and its exclusion would be sustained, even if the bill showed what the witnesses would testify to if they had been permitted. This the bills of exceptions do not reveal, no connection was shown between the nuisance and sickness. The third assignment of error is overruled.

[6] It appeared from the evidence that one Tidwell had sued the Purina Mills, whose building was near that of appellee, for damages arising from the same water and filth whose accumulation is charged to appellee in this case, and it was permissible for appellee to ask appellant and his witnesses as to what they swore about the nuisance in the former case. It tended to contradict them and to show that they did not know who had created the nuisance. The fourth, fifth, sixth, and seventh assignments of error are overruled.

[7] The eighth assignment of error is overruled. The court properly excluded the ordinance of the city of Fort Worth defining a nusance. It was not pertinent to anything in the case. Appellee was not shown to have created any nuisance.

[8] The ninth assignment of error is overruled. The witness Pettyjohn swore that he was the superintendent for appellee from 1913 until June 22, 1919, and looked after the physical properties, and showed that he had sufficient knowledge of the situation to state that all was done that could be to keep water out of the pit, and that the drains were sufficient for the immediate vicinity of the plant. He did not swear as stated by appellant in objecting to his testimony "that the drains were sufficient for the protection of the sinks of the building from overflow water." He showed that he was qualified to testify as an expert.

The tenth assignment of error is overruled as well as the eleventh assignment as to the testimony of Jules G. Smith.

[9] The action of the trial judge in repeatedly giving his unsought opinion of the law and in his cross-examination of witnesses, is not to be commended, but in this instance we cannot perceive that any injury resulted that would require a reversal. All of the remaining assignments of error are overruled.

SMITH, J., entered his disqualification in this case.