[1] The rule applicable to election is stated in 10 R. C. L. 703, 704, as follows:

"If one having a right to pursue one of several inconsistent remedies makes, his election, institutes suit, and prosecutes it to final judgment or receives anything of value under the claim thus asserted, or if the other party .has been affected adversely, such election constitutes an estoppel thereafter to pursue another and inconsistent remedy. And where the right in the subsequent suit is inconsistent with that set up in the former suit, as distinguished from a merely inconsistent remedy, the party is estopped though the former suit may not have proceeded to judgment. But where the inconsistency is in the remedies it is generally considered that there is no estoppel where the former suit was dismissed without trial or before judgment."

However, there is conflict in the authorities as to whether under all circumstances the mere filing of a suit, which is not prosecuted to judgment, based on an inconsistent cause of action, is an irrevocable election to rely on the remedy being sought, and a complete bar to an action thereafter filed seeking relief which is repugnant/to that claimed in the former suit. A decision of the question here presented does not require a holding that such bar would or would not result.

Here Guy and wife had executed the lease under which plaintiffs in error claimed a leasehold interest. If it was valid and binding on them, they owed plaintiffs in error the duty to do nothing which would interfere with the full and complete enjoyment of the rights which they had conveyed. By the terms of the lease, plaintiffs in error were the owners of valuable rights. They had the right to sell and dispose of their leasehold interest for a valuable consideration. They or their assigns had the right within the five-year period to drill wells on the land and to take the oil therefrom to exhaustion, paying, of course, the royalties for this privilege. The former suit filed by Guy and wife asserted a claim not only inconsistent with these rights, but antagonistic to them. It was an effort to have the court decree that plaintiffs in error had no leasehold interest in the land. This attack upon the rights of plaintiffs in error continued for practically the entire period for which they now seek to collect the rentals or payments, which under their lease contract were necessary to continue the lease in effect. The nature of their former suit was such as to either destroy or seriously impair the value of the leasehold interest from the time the former suit was filed until the leasehold interest owned by plaintiffs in error expired under the terms of the lease. By the institution and prosecution of the former suit they have injuriously affected the rights of plaintiffs in error to the leasehold interest held under the contract which they had executed.

This conduct (the repudiation of their contract and the institution of suit to cancel) cast a cloud upon the title to the leasehold interest which they had conveyed. It would be shocking to a sense of justice to hold that after they had, by such conduct as is shown in this case, destroyed or seriously impaired the value of the property conveyed by them, they could recover the consideration for same under the terms of the contract.

[2] We think the facts disclosed by the record meet every essential requirement of an equitable estoppel, and that the refusal to accept the rentals when paid by the plaintiffs in error in the depository bank with instruction to return them, and the filing and prosecution of the suit to cancel the lease contract, amounted to such an estoppel as to bar the recovery of the deposited money rentals, and recommend that the question certified be answered in the affirmative.

CURETON, C. J. The opinion of the Commission of Appeals answering the certified questions adopted, and ordered certified to the Court of Civil Appeals.

---

## HARGROVE v. FORT WORTH ELEVATOR CO. (No. 697–4256.)

(Commission of Appeals of Texas, Section A. Oct. 21, 1925.)

1. Trial ⟨key⟩365(1)—Interpretation by Court of Civil Appeals of jury's answer to special issues as finding that no injuries occurred from nuisance rather than defendant did not proximately cause nuisance is wrong.

In an action for damages caused by a nuisance, where jury in special issues found "that defendant did not, as alleged, cause or permit grain, refuse, or other substances to go from its premises upon and about the property of plaintiff," held, that this was a finding that defendant was not proximate cause of nuisance complained of and not a finding, as indicated by Court of Civil Appeals, that no injuries occurred.

2. Appeal and error ⟨key⟩1046(5)—Trial ⟨key⟩29(3)—Questioning of witness by trial court held prejudicial error as discrediting his testimony and indicating court's opinion as to issues involved in case.

In a suit for damages .caused by a nuisance, where court questioned witness as to his testimony in a prior suit, held that such question-

ing of witness was error and prejudicial, in that it tended to discredit testimony of the witness, and indicated court's opinion as to issues involved in case.

**3. Trial ⊂⟩29(1)—Trial court should preside with impartiality, and he should say and do nothing calculated to influence minds of jury in regard to facts in issue.**

Trial judge should preside with impartiality, and, when case is before jury, he should be careful to say or do nothing calculated to influence their minds in regard to facts in issue, the solution of which it is their duty to determine.

**4. Trial ⊂⟩29(3)—Trial judge should not indicate by words or manner disbelief of a witness or of a material fact which litigant is endeavoring to establish.**

While it is within the authority of court to examine witnesses, he should not in doing so by words or manner indicate his disbelief of a witness or of a material fact which the litigant is endeavoring to establish.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Robert Hargrove against the Fort Worth Elevator Company. From a judgment (262 S. W. 868) for defendant, plaintiff brings error. Reversed and remanded.

Sawyers & Ambrose, of Fort Worth, for plaintiff in error.

Smith & Smith, of Fort Worth, for defendant in error.

BISHOP, J. On August 23, 1920, the plaintiff in error, Robert Hargrove, instituted this suit in the Sixty-Seventh district court of Tarrant county against the Fort Worth Elevator Company, defendant in error, alleging in his petition that for the two years next preceding that date defendant in error had dumped large quantities of rotten grain, filth, and ill-smelling water into the street and gutter of East Second street so that they ran down in front of his residence, and stood in a foul, stinking, stagnant pool, which affected his health and comfort, and rendered his home unfit for use and enjoyment. Issue having been joined, the case was tried, resulting in a verdict on special issues, and judgment for defendant in error. This judgment was by the Court of Civil Appeals affirmed. 262 S. W. 868.

[1] On the trial there was an issue of fact as to whether the rotten grain and filth were conveyed by a sewer pipe extending from the premises of defendant in error and emptying into Second street, or were conveyed there by surface water from the premises of the Ralston Purina Mills, another grain company, situated near the premises of defendant in error.

One Jesse Tidwell, who owned property near plaintiff in error, had sued the Ralston Purina Mills for damages, alleging facts showing a similar nuisance, and this case had been theretofore tried. There was evidence that the sewer pipe extended from the premises of defendant in error under the railroad tracks and also under the premises of the Purina Mills, and emptied into Second street.

The jury, in answer to the special issues submitted, found that defendant in error "did not, as alleged, between August 23, 1918, and August 23, 1920, cause or permit grain, refuse, or other substances to go from its premises upon or about the property of" plaintiff in error. They did not, as recited in the opinion of the Court of Civil Appeals, find that plaintiff in error "was not made sick at those times, nor suffered pain or mental anguish, and suffered no damage as a proximate result of the accumulation of grain, refuse, and other substances on or about his property." What they did find is that no such injury was suffered as a proximate result of the defendant in error permitting grain, refuse, and other substances to go from its premises upon and about his property. The judgment is clearly predicated upon the finding that defendant in error did not cause the nuisance complained of, and not upon a finding that no injury occurred. There is evidence that such injury did occur.

[2] Complaint is made at the action of the judge of the trial court claimed to have been prejudicial to plaintiff in error on the issue as to whether defendant in error caused or permitted rotten grain and filth to accumulate near the residence of plaintiff in error as was alleged. While one Joe Marcello, a witness for plaintiff in error, was testifying on direct examination, and after he had stated that he saw the accumulation of grain and filth, and that it was offensive, the judge propounded to him the following questions, which were answered as shown, to wit:

"The Court: I want to ask this witness a question—what is his name—Marcello? I want to get some matters straightened out in view of his answers. Do you remember about two or three years ago that you were a witness up here in the case of Jesse Tidwell against the Purina Mills?

"The Witness: I don't understand.

"The Court: Do you remember that we tried a case in this court about two years ago in which a man by the name of Jesse Tidwell—

"The Witness: Yes, sir.

"The Court: Sued the Purina Mills?

"The Witness: Yes, sir.

"The Court: And you were a witness in that case, were you?

"The Witness: I think I was; yes, sir.

"The Court: You testified in that case yourself?

"The Witness: Yes, sir; I did.

"The Court: Do you live now where you did then?

"The Witness: Yes, sir.

---

⊂⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The Court: How far was Tidwell's property from Mr. Hargrove's property—it was in the same neighborhood—in the same neighborhood?

"The Witness: Yes, sir.

"The Court: About how many feet is Tidwell's property from Hargrove's property?

"The Witness: I guess about 50 or 60 feet, something like that.

"The Court: Right close together?

"The Witness: Yes, sir.

"The Court: Do you remember testifying in that case—state whether or not you did testify in that case that there was grain and odor and sediment that came from the Purina Mills onto Tidwell's property?

"The Witness: Yes, sir; I remember.

"The Court: And you testified that that grain and odor and sediment came from the Purina Mills, did you not?

"The Witness: Well, it came onto the—under the track, in that sewer—it came from under the track.

"The Court: From where? A. It came from the Purina or from under there, because it came right through under the track, you know. I cannot tell you exactly from what it came from; it came from under that hole.

"The Court: And that suit was by Jesse Tidwell against the Purina Mills? A. Yes, sir."

While this witness was being cross-examined by the attorney for defendant in error, the judge asked the plaintiff in error if it was not a fact that he also testified as a witness in the case of Jesse Tidwell against the Ralston Purina Mills, and, over an objection that such action on the part of the judge was prejudicial to him, required him to make answer to this question.

These questions indicated that the judge was not only attempting to discredit the testimony of the witness, but also was of the opinion that the nuisance complained of was not caused by the defendant in error, but was caused by the Ralston Purina Mills. This conduct was improper, and calculated to prejudice the rights of plaintiff in error. It was clearly an interference with the right of a litigant to have the jury pass on issues of fact without being influenced by prejudicial statements made by the judge in their presence and hearing. It was unfair, and we may not presume that no injury resulted.

[3, 4] On the trial of all cases the judge should preside with impartiality, and in a trial before a jury, who are the sole judges of the credibility of witnesses and the weight to be given their testimony, he should be especially careful to say or do nothing which would be calculated to influence their minds in regard to facts in issue, the solution of which it is their duty to determine. While it is within his authority to examine witnesses, in doing so he should not indicate by words or manner either his disbelief of a witness or of a material fact which a litigant is endeavoring to establish. 38 Cyc.

1316; 26 R. C. L. 1026; Lewter v. Lindley, (Tex. Civ. App.) 89 S. W. 784; St. Louis & S. F. Ry. Co. v. Lano (Tex. Civ. App.) 110 S. W. 530.

We recommend that the judgments of the district court and the Court of Civil Appeals be reversed and the cause remanded to the district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.