### ACKER et al. v. THOMPSON et al.
### No. 13881.

Court of Civil Appeals of Texas.
Fort Worth.

April 28, 1939.

Rehearing Denied May 26, 1939.

854

H. T. Brown and Norman, Stone & Norman, all of Jacksonville, and Smithdeal, Shook & Lefkowitz, of Dallas, for appellants.

Andrews, Kelley, Kurth & Campbell, Sewell, Taylor, Morris & Connally, and W. J. Knight, all of Houston, for appellees.

SPEER, Justice.

This suit grows out of a collision between a railway train and an automobile, at Troup, in Cherokee County, Texas.

C. D. Acker, as guardian of certain named minors, who were children of the victims of the accident, and as administrator of the estate of Mrs. J. C. Gourley, deceased, joined by others, sued International-Great Northern Railroad Company, a corporation, and Guy A. Thompson, its trustee, in a district court of Cherokee County, Texas, to recover damages for the death of Mrs. J. C. Gourley, alleged to have been the result of the negligence of defendants, resulting in the death of both J. C. Gourley and his wife, and their infant child, on February 16th, 1936.

The petition charged defendants with many acts of negligence. The verdict convicted them of negligence in, (a) failure to keep that part of the public road across the right-of-way in a reasonably safe condition for travel; (b) operating the train upon this occasion at an excessive rate of speed; (c) failure to keep a proper lookout; and (d) failure to ring the bell on the locomotive at least 80 rods before reaching the crossing. The verdict also established that each of these acts constituted negligence and were proximate causes of the death of Mrs. Gourley. The amount of damages was set at $15,000.

The jury, by its verdict, found that Mrs. Gourley was guilty of contributory negligence, which was a proximate cause of her death, in failing to discover the approaching train in time to have warned her husband, who was driving the automobile, to stop before going into the place of danger. The verdict was to the further effect that J. C. Gourley, the driver of the automobile, was guilty of contributory negligence proximately causing the collision, in (a) failing to exercise his sense of sight to discover the approaching train before attempting to cross the track; (b) failing to become aware of the approaching train before attempting to cross the tracks; and (c) failing to remain in a place of safety by the side of the track.

Upon the verdict rendered, the court entered judgment against plaintiffs, and they have perfected their appeal to the Texarkana Court of Civil Appeals, and by order of the Supreme Court, the case is before us for review. The parties will carry the same designation here as in the trial court.

The judgment for damages was denied plaintiffs because of the verdict of the jury that convicted the Gourleys of contributory negligence, which was a proximate cause of their deaths. Both the occupants of the automobile are dead, and the jury was compelled to take the evidence of a number of persons who saw the accident, from their respective points of view. It is a matter of common knowledge that railway trains are operated on the tracks prepared for that purpose, and that persons crossing such tracks are chargeable with knowledge of the dangers incident thereto, but it is equally true that railway companies know that the public is entitled to cross their tracks at public places, and that both they and the public cannot use such place at the same time. The railway company is no doubt as anxious that its employees do not injure anyone as the general public is solicitous that it be not done. It is but fair, also, to assume that persons situated as were the Gourleys would not wilfully and intentionally expose themselves to unnecessary dangers, but that they acted as any other reasonably prudent person would have acted, under such conditions. With this in view, it became necessary for the company, to escape liability after negligence is shown, to establish by competent testimony that the Gourleys contributed to their own deaths by their negligent acts.

It is easy, after an accident has happened, to see how it could have been avoided. But this is not the proper test. It must be viewed from the standpoint of a reasonably prudent person surrounded at the time, as were the participants in the collision. Here we have, upon one hand, the defendants operating their passenger train on their line at a speed of about 55 miles per hour, and approaching a highway crossing which, from some of the evidence,

the engineer cannot see until he is so close to it that he is unable to bring the train to a stop before reaching it, should the necessity arise. By the testimony of the engineer he could see the crossing a sufficient distance. The testimony shows it took approximately 1,200 feet in which to stop this train after it struck the automobile. Upon the other hand, we find persons using the highway passage across the tracks, with evident knowledge that a train may be approaching and yet not in their sight, which would reach the crossing within from ten to fifteen seconds.

Such a condition as described presents a very serious situation, both for the railway company and the public. The evidence shows there was a cold wind blowing from the north. Such wind would tend to keep the noise of the train and its signals from being heard to the northward, the place where the accident happened. The Gourleys are shown to have had their automobile closed, a natural thing to do, on a cold day, especially with the baby in the car. All these conditions are incidents which doubtless contributed to the fatal collision, yet they are such as both parties should have realized would render more probable the very thing that did happen. Thus placing upon each of the parties a greater responsibility than they would have had if these conditions had not existed.

The jury said Mrs. Gourley was guilty of negligence in failing to discover the approaching train in time to advise her husband of the danger, so that he would stop the car. As stated, the verdict further said that J. C. Gourley was negligent in failing to use his sense of sight to discover the approaching train, as well also that he was guilty of negligence in not remaining in a place of safety. Boiled down, two of the elements of negligence were because Mr. and Mrs. Gourley should have seen the train as it approached, and the next point is that, it being their duty to have seen the train coming, they should have remained in a safe place until it passed. These were contested points in the issues, and, as we have demonstrated, involved a very short period of time.

■ By the jury verdict, in response to special issue No. 22, it was found that Mrs. Gourley did not discover the train in time to warn her husband against the danger. By Issue No. 27 it was said that she did not fail to keep a lookout for the approaching train, and by Issue No. 31 the jury determined that she did not fail to listen for the train. Yet, to Issues 35 and 36, the jury answered that Mrs. Gourley negligently failed to discover the approaching train in time to warn her husband against driving into a place of danger, and that such negligence was a proximate cause of the injury and her death.

By their ninth proposition, based on appropriate assignments of error, plaintiffs claim the answers of the jury in the respects mentioned are contradictory and cannot form the basis for an ultimate finding of contributory negligence on the part of Mrs. Gourley. We think their contention is correct, and but for the further finding that her husband was negligent, proximately causing the injury, there would be reversible error in the answers referred to. But a reversal will not be based solely upon those answers.

■ The tenth proposition challenges the judgment of the court, based on a finding of contributory negligence of J. C. Gourley, because it is claimed that the answers of the jury are conflicting and self destroying. With this we do not agree. The issues and their answers relied upon are: No. 43, J. C. Gourley did not attempt to cross the track after he was aware of the approaching train. No. 78, the failure of J. C. Gourley to bring his automobile to a full stop before attempting to drive across the railway track was not negligence. No. 81, it was negligence for J. C. Gourley to fail to remain in a place of safety near the railway track, and by a subsequent issue, that said negligence was a proximate cause of the death of his wife. The answers mentioned are not inconsistent with each other when read in connection with Issue No. 51 and its answer. That question and answer found that J. C. Gourley failed to exercise his sense of sight to discover the approaching train before he attempted to cross. By subsequent answers this was found to be negligence and a proximate cause of the injuries. It was not inconsistent for the jury to answer that Gourley was negligent in not remaining in a safe place when, by the answer to Issue No. 51, they had said he had not exercised his sense of sight to ascertain if a train was approaching. In other words, the effect of the jury's answer to Issue 81 was that he should have remained in a place of safety until he had both listened and looked for an approaching train. It is not inconsistent to say that both of these things could

be done without bringing the automobile to a full stop.

Plaintiffs' right of recovery was defeated because the driver of the car failed to "look" before attempting to cross the track, to ascertain if a train was coming. An anomalous situation confronts us just here. The jury found that Mrs. Gourley both looked and listened for a train, yet she was negligent in not discovering it in time to warn her husband against going upon the tracks. Mr. Gourley listened but did not look. He was absolved from fault in not bringing his car to a full stop before attempting to cross.

The record shows the Gourleys were driving north on a highway and it became necessary for them to turn across the railway tracks at right angles from the highway, while driving twenty to twenty-five miles per hour. The roadway across the tracks was only wide enough for one car to pass at a time. The road bed was out of repair and very rough. The husband was driving and listening for an approaching train. The wife looked and saw no danger. It will never be known whether the wife said anything to her husband after she looked to ascertain if a train was coming. The jury said he did not look. The road was rough and narrow across the tracks. The train was two to five minutes late and there was another train at the station on the opposite side from the direction from which the train in question was approaching. The presence of the other train may have had the effect to distract the driver's attention in that direction. This is not an unfair assumption. Kirksey v. Southern Traction Co., 110 Tex. 190, 217 S.W. 139. This was a matter the jury could consider in arriving at whether or not the husband was guilty of negligence which was a proximate cause of the accident. The one thing which required the entry of a judgment against plaintiffs was the finding that the husband did not use his sense of sight; that is, he did not look to ascertain if a train was approaching. If, by looking, Gourley could have seen the approaching train in time to have avoided the collision, clearly his failure to do so was negligence and a proximate cause. Yet the jury found that the wife did not fail to look and did not see the train in time to advise her husband of its approach. If the husband had looked, he perhaps would have seen just what his wife saw. The record, of course, is silent as to what she saw, if anything, of an approaching train.

Even with this novel situation, we do not consider the answers in regard to J. C. Gourley's negligence so irreconcilably conflicting as to require a reversal of the case on that ground.

We have discussed the foregoing propositions first, purposely to show the closely drawn line of distinction between the acts of the wife and those of the husband, resulting in contributory negligence upon the part of the latter, as an approach to another point in the case which we have concluded presents error for which the judgment should be reversed.

The evidence upon which the verdict of the jury was based is just as conflicting as it could have been; some witnesses testifying to a given state of facts, while others testified just as positively to the contrary. So irreconcilable were some parts of the testimony that counsel for one of the parties refers to certain witnesses in very uncomplimentary terms. The case had been tried at a previous term, when the witness, Shuford Walker, a colored man, had testified in person. At the trial from which this appeal was taken, he testified by deposition, procured by written, direct and cross interrogatories. His testimony given by deposition was materially different from that given at the former trial, and more favorable upon the latter occasion to plaintiffs than at the first trial. When plaintiffs had finished reading the deposition in evidence, defendants offered certain parts of the witness's testimony given at the former trial, in contradiction of that given by deposition. The previous testimony was in form of the transcribed notes of the official court reporter. No question is raised by plaintiffs that it was not properly written and transcribed, but its introduction was objected to by them because it could only be admitted in evidence for impeaching purposes, and that no predicate had been laid in the last examination of the witness to justify his impeachment by showing contradictory statements, even in evidence upon another trial. The court overruled plaintiffs' objection and stated while ruling upon the question, in the presence of the jury, that "The only purpose for which it (the evidence of contradictory statements) is admissible is for impeachment purposes. That is the theory upon which it will be admitted."

Both the rulings of the court upon the admission of the testimony and the comment of the court are presented by separate

bills of exception, and each forms the basis of assignments of error and propositions thereunder. We think both are well taken and require a reversal of the judgment.

Relative to the admission of the testimony, defendants filed cross interrogatories, and they claim a sufficient predicate was laid to warrant the introduction of the former testimony. Such predicate as is claimed consisted of the following cross interrogatories and answers:

"Cross Interrogatory No. 55: You testified in this case when the same was tried during February of this year, did you not? Answer: I testified in the Gourley case that was tried last February.

"C. I. No. 56: Is there any part of your testimony which you gave on the trial on that occasion which is not true? Answer: It is all true.

"C. I. No. 57: If you have stated in response to preceding interrogatory that some part of the testimony given on that occasion is untrue, then state what portion was untrue. Answer: It was all true.

"C. I. No. 58: State whether or not the testimony you gave on the previous trial of this case was true in all respects or not. Answer: Yes, sir."

 It is well settled by the many decisions of our courts of last resort that to impeach a witness and discredit his testimony by proving that he has made contradictory statements in regard to the matters testified to, a proper predicate must be laid. Such predicate consists of first asking the witness while he is testifying whether or not he has made certain statements which are at variance with his present testimony. the name or names of the person or persons to whom he is supposed to have made them and the occasion or time and place. If the particular words, or names of persons or even the identical time and place, cannot be related, these matters substantially must be called to the attention of the witness, so that he may have an opportunity to either affirm or deny them, to indicate that he does not know, or, if he chooses to do so, to make any explanation thereof which he may desire. This rule is not new to our jurisprudence. Some of the cases adhering to the rule announced are: Bigham & McCall v. Carr, 21 Tex. 142; Weir v. McGee, 25 Tex.Supp. 21; Ayres v. Duprey, 27 Tex. 593, 594, 600, 86 Am.Dec. 657; Galveston, H. & S. A. R. Co. v. Le Gierse, 51 Tex. 189, 204; Johnson v. Richardson, 52 Tex. 481, 495; Ft. Worth & D. C. Ry.

Co. v. Thompson, 75 Tex. 501, 12 S.W. 742; McCamant v. Roberts, 80 Tex. 316, 15 S.W. 580, 1054; Smith v. Jones, 11 Tex.Civ.App. 18, 31 S.W. 306; Galveston Electric Co. v. Dickey, 59 Tex.Civ.App. 472, 126 S.W. 332; Gutzman v. City of Fort Worth, Tex. Civ.App., 155 S.W. 1182; Zeiger v. Woodson, Tex.Civ.App., 202 S.W. 163; Joy v. Liverpool, etc., Ins. Co., 32 Tex.Civ.App. 433, 74 S.W. 822, writ denied; St. Louis Southwestern R. Co. v. Bishop, Tex.Civ. App., 291 S.W. 343, writ denied, and the many cases there cited; Opet v. Denzer et al., Tex.Civ.App., 93 S.W. 527; Southern Pacific Co. v. Henderson, Tex.Civ.App., 208 S.W. 561, writ refused; International & G. N. R. Co. v. Boykin, 99 Tex. 259, 89 S.W. 639. Many cases of similar import could be cited, but to do so would entail unnecessary labor and length to this opinion. A similar question of variance between oral testimony given and that made by deposition is discussed in many of the above cases. We have seen no case by one of our appellate courts which announces a different rule to that mentioned by us above. We are deeply indebted to counsel on both sides in this case for most excellent briefs, and many more authorities collated than we have seen fit to bring into this discussion.

By deposition heard upon the trial, the witness Walker testified that he was near a stock guard on the tracks and was walking on the side track a distance of about 75 feet from the crossing where the accident happened; that he saw the car before it was struck by the engine; he detailed how the pilot of the engine picked up the car and carried it some 400 yards before the train was stopped. This witness also told of having seen another train at the depot some distance north of the place of the accident, which train was headed south and doing some switching in the yards; he said he saw steam coming from the locomotive in the yard. If the witness's testimony given by the deposition was to be believed, he perhaps was the closest disinterested person to the place of the accident, and his testimony was very material to plaintiffs' theory of the case.

The testimony given by this witness upon the former trial, which forms the basis for the assignment of error under discussion, was at variance in many respects to that given in the deposition. When defendants proposed the introduction in evidence of the former testimony, the jury was excluded from the room for the time being, and counsel stated to the court that they wanted

to offer the testimony, "First, for the purpose of impeaching his testimony upon this trial; and second, upon the theory that it is admissible to prove where the witness was at the time he made the observations that he has testified about." When the proposed testimony was read to the court, counsel for plaintiff made the objection it was not admissible for impeaching purposes because no predicate had been laid, and further contended that if it was admitted, defendant should be required to introduce the whole of the testimony given at the former trial in connection with parts proposed. The court stated at that time that the evidence was admissible only for impeaching purposes, and admitted it, over plaintiffs' objections, for that purpose only.

The testimony given upon the former trial disclosed that the witness was at another place further south about 400 feet than he claimed to have been when testifying by deposition; which position would have placed him approximately 475 feet from the place of the accident, and at a point where he could not have made the observations testified to by deposition. At the former trial he was shown to have said his location was about 100 steps south of the crossing, but the place identified by him on cross examination disclosed the point was about 475 feet south. In his former testimony he said he did not see the engine hit the automobile, and the first thing that attracted his attention was seeing the automobile on the "catcher".

In their briefs defendants insist that the predicate was laid in the deposition for the introduction of the impeaching statements; that the inquiry made in the cross interrogatories, above quoted, as to whether or not the testimony given on the former trial was true, was a sufficient predicate. They say, that at the time the written interrogatories were propounded they could not know what he would testify and could not therefore ask about any particular matters to make the inquiries more specific, and therefore the predicate was sufficient. We do not think the predicate sufficient under the authorities cited above. Moreover, the record discloses that the deposition was taken on June 23rd, 1937, and the trial of the case was begun on January 10th, 1938, approximately six months after taking the deposition, and if defendants had desired to impeach or contradict the witness, as was attempted, ample time was afforded them to again take the witness's deposition with

that in view. In the circumstances before us, the witness was never asked in regard to the particular matters about which defendants sought to contradict him, and he was given no opportunity either to admit or deny them; nor to explain any part thereof, as provided by the rule in such cases.

Defendants further insist that the testimony was admissible independently of serving to impeach the witness, as original circumstances tending to show his testimony given by deposition was untrue. They cite us to the case of Gulf, C. & S. F. R. Co. v. Matthews, 100 Tex. 63, 93 S.W. 1068, 1070, where the court, in discussing a rather complicated situation, disclosed by the evidence, said: "'As all issues of fact must be determined by the testimony of witnesses, it would seem that any fact which bears upon the credit of a witness would be a relevant fact and this whether it goes to his indisposition to tell the truth, his want of opportunity to know the truth, his bias, interest, want of memory, or other like facts.'" We have carefully read that opinion and others cited to the same effect, and find there are distinguishing facts in them from the situation before us, and therefore think they are not controlling here. It is further contended that the extracts from the former testimony of Walker were admissible upon the theory that the testimony was given upon a former trial of the case and he was not present in court to testify. This meets one phase of the exception to the rule in regard to the admissibility of such evidence, but the further element in the rule, that the person offering the testimony has shown reasonable excuse for failure to procure his testimony otherwise, does not appear. 14 Tex.Jur., p. 658, sect. 276. In fact, we think the opposite is shown; that is, that defendants did have an opportunity to procure the witness's testimony upon the trial now being reviewed. We have demonstrated this in connection with the taking of the deposition of the witness, and the time shown to exist between the time his deposition was taken and the date of the trial. The assignment under which this action of the court is complained of must be sustained.

In connection with the matters last above discussed, plaintiffs assign as error the action of the court in refusing to require defendants to read, and introduce in evidence in connection with the parts of the witness's former testimony offered, all of

his testimony given upon the former trial. To comply with such a request would have been error.

■ By another assignment, plaintiffs complain because the court refused them the right to introduce other parts of Walker's testimony given upon the former trial, which parts were in connection with and related to the same subject matter to that erroneously admitted when offered by defendants. The right insisted upon by plaintiffs is well taken, but unless and until the other portions become admissible, it is unnecessary for us to enlarge upon that point.

■ Plaintiffs' assignment of error 3c and proposition seven thereunder present what we believe to be reversible error in this case. By an approved bill of exception, plaintiffs present the controversy had when defendants offered the portions of the testimony of the witness Walker, complained of, and discussed above, and which parts of the testimony were admitted; the complaint in this assignment being that the court commented upon the weight of the testimony and the credibility of the witness, in the presence of the jury, when it was admitted. The bill shows that the court said, in admitting the testimony: "The only purpose for which it is admissible is for impeachment purposes. * * * That is the theory upon which it will be admitted."

It is a matter of common knowledge that jurors selected to try issues of fact between litigants regard the trial court as an instrumentality designated by our laws as an arbiter of matters arising between citizens and with his known integrity and knowledge of the law, that he possesses a superior ability to pass upon those things. Hence, the trial court should refrain in giving charges or in ruling upon the admissibility of evidence, from indicating what is his opinion on the weight to be given the testimony or of the credibility of the witness giving it. These are the functions of the jury and must not be infringed by the court.

The comments made by the court in the instant case announced a correct principle of law, but they are not shown to have been elicited by a request that the testi-mony objected to be limited, while being considered by the jury, to impeaching purposes alone. To the mind of the average layman sitting as a juror, the idea that a witness has been impeached means much. It has the indisputable tendency to lead the juror to believe that the witness has sworn falsely in one or more matters and causes him to doubt other matters testified to by the witness, even though not directly contradicted. We can not know what effect the remarks of the court had upon the minds of the jurors when they retired to consider the weight of the testimony and the witness's credibility. To say the least as to the result attained, plaintiffs failed to recover. The assignment is well taken.

The authorities cited by plaintiffs support their contention. See Smith v. Dunman, 9 Tex.Civ.App. 319, 29 S.W. 432; Howeth v. Carter, 23 Tex.Civ.App. 469, 56 S.W. 539; City of Fort Worth v. Burton, Tex. Civ.App., 193 S.W. 228; Hargrove v. Fort Worth Elevators Co., Tex.Com.App., 276 S.W. 426; American Express Co. v. Chandler, Tex.Com.App., 231 S.W. 1085; Murray v. Morris, Tex.Civ.App., 17 S.W.2d 110; McDaniel v. Orr, Tex.Com.App., 33 S.W.2d 427; Southland Greyhound Lines, Inc., v. Matthews, Tex.Civ.App., 74 S.W. 2d 713, writ denied, and cases there cited; City of Houston v. Pillot, Tex.Com.App., 105 S.W.2d 870. We have carefully read the cases of Park v. Sullivan, Tex.Civ. App., 12 S.W.2d 265, and Rhea v. Cook, Tex.Civ.App., 174 S.W. 892, relied upon by defendants. From the facts discussed in them, we see distinctions which should not prevail over those above cited.

There are other matters presented by plaintiffs, but we have reviewed them carefully in connection with the assignments discussed, and it would unduly prolong this opinion to go more into detail. Suffice it to say, other matters complained of are incidental to the assignments discussed, and they will not arise upon another trial, if the rules herein discussed are observed.

For the reasons above set out, we conclude that the judgment of the trial court should be reversed and the cause remanded for another trial. It is so ordered.