Tom H. WILKINSON, Appellant,

v.

Genevieve MOORE, Appellee.

No. 17986.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 28, 1981.

Rehearing Denied July 30, 1981.

EVANS, Justice.

This is a will contest.

The testatrix, Corrine Carlyle Wilkinson, died in Goliad County on October 18, 1975, at 94 years of age. In her will, bearing date of July 28, 1971, she devised a life estate in an undivided one-half of her real property to a nephew, James New, and she devised the balance of her estate to her niece, Mrs. Genevieve Moore. This will contest was initiated by another nephew, Tom H. Wilkinson.

As grounds for his action to set aside the will, the contestant alleged both undue influence and lack of testamentary capacity. The will previously having been admitted to probate, it was the contestant's burden to establish these allegations by a preponderance of the evidence. *Chambers v. Winn*, 137 Tex. 444, 154 S.W.2d 454 (1941).

In response to special issues, the jury failed to find that Mrs. Wilkinson lacked testamentary capacity on July 28, 1971, the date she executed her will. Neither did the jury find that she had been induced to make the will by the exercise of undue influence upon her by Mrs. Moore. The contestant does not raise a point of error with respect to the issue of undue influence, but he does contend, in his fifth point of error, that the jury's failure to find that the testatrix lacked testamentary capacity is against the great weight and preponderance of the evidence. Although it was the contestant's burden to obtain a favorable fact-finding on this issue, his point of error requires that this court exercise its fact-finding jurisdiction to determine whether the jury's answer is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. *Parrish v. Hunt*, 160 Tex. 378, 331 S.W.2d 304 (1960); *Traylor v. Goulding*, 497 S.W.2d 944 (Tex.1973).

In a will contest on the ground of testamentary incapacity, the issue is the condition of the testator's mind on the date

Christian Jenkins, Corpus Christi, for appellant.

R. D. Cullen, Cullen, Carsner, Seerden & Williams, Victoria, for appellee.

Before EVANS, WARREN and DOYLE, JJ.

the will was executed. Where proof is offered to show the testator's incompetency at other times, such evidence has probative effect only where it is demonstrated that the condition persists and "has some probability of being the same condition which obtained at the time" the will was executed. *Lee v. Lee*, 424 S.W.2d 609 (Tex.1968).

■ The testatrix possessed testamentary capacity if she understood she was making a will, knew the nature and extent of her property, knew the persons dependent upon her bounty and the persons to whom she meant to leave her estate, and knew how she meant to distribute her estate. She must have had a memory sufficient to collect in her mind the elements of the business to be transacted, and she must have been able to form a reasonable judgment as to the disposition of her estate. *Bettis v. Bettis*, 518 S.W.2d 396 (Tex.Civ. App.—Austin 1975, writ ref'd n.r.e.).

Mr. M. L. Null, an attorney in Goliad, was the draftsman of Ms. Wilkinson's will. He testified that Ms. Wilkinson called him at his office and requested that he come to her home to draw up a new will for her. At her home he had a long conversation with her during which her niece, Mrs. Moore, and a nurse were present. Ms. Wilkinson was at that time eighty-nine years old, and according to Mr. Null, she was very alert, clear-minded and had a clear voice. She knew who she was, who her family members were, and that she had never been married. She discussed her family, including her sisters and brothers, and their children by name. After that, they discussed her property, and she was aware of the acreage she owned, the nature of her business, her income, and who managed her property. She told Mr. Null that she wanted to leave her estate in equal portions to her niece, Mrs. Moore, and to her nephew, Mr. New, but she wanted Mr. New to have only a life estate in his share because she believed that this would result in a tax savings, and she did not want her nephew's third wife to inherit her estate. In her first conversation with Mr. Null she wanted to name in her will the beneficiaries who would eventually take her property under Mrs. Moore's will, but after a subsequent conversation with Mr. Null, she agreed not to try to impose that restriction on Mrs. Moore's power of disposition. Mr. Null drew up the will in accordance with her wishes. It devised to Mr. New a life estate in one-half of her real property and the remainder of her estate to Mrs. Moore and her heirs. In drafting this will, Mr. Null excluded the family home and its contents from the terms of the will because Ms. Wilkinson wanted to deed her home and its contents to Mrs. Moore to prevent Mr. New's wife from having the use of it.

When the will was ready to be executed, Ms. Wilkinson went to Mr. Null's law office. She was accompanied by her niece, Mrs. Moore, and a Mrs. Baker. Ms. Wilkinson first signed the deed to her house and a bill of sale covering its contents. Then, as Ms. Wilkinson read her will, Mr. Null diagrammed it for her. Ms. Wilkinson indicated satisfaction with her will as written and found that it conformed to the conversations she had with Mr. Null about it. She signed the will in his presence and in the presence of two other witnesses from his law firm, and then all three witnesses signed the will in the presence of each other. No one forced Ms. Wilkinson to sign the will.

Mr. Null testified that there was no question in his mind that when Ms. Wilkinson executed her will she knew what she was doing. He stated that she was cognizant of the effect of the will, knew the objects of her bounty, and the extent and disposition she was making of her property. She did not appear to be under the influence of drugs and did not appear to be frightened.

Ms. Wilkinson's personal physician, Dr. Tom B. Reagan, testified by deposition that he had examined her on the day prior to the date she executed her will. He saw her on that occasion because she complained of a sore throat and was having difficulty in swallowing. At that time she was in a good state of mind and mentally alert. She could read and her memory was sharp. Dr. Reagan had treated Ms. Wilkinson since

about 1940 and continued to treat her up to the time of her death in 1975. She was always a very bright person, and her mental condition did not deteriorate until about six months prior to her death.

The proponent offered similar testimony from another attorney who had represented Ms. Wilkinson for some ten to fifteen years, and also from her accountant, and from her companion, nurses, and friends.

The contestant did not offer any contradictory evidence regarding Ms. Wilkinson's testamentary capacity on the day she talked with Mr. Null about drafting her will or the day on which she executed her will, and he relies solely upon testimony tending to show irrational behavior on occasions prior to and subsequent to the execution of her will. In this respect, the contestant points to testimony indicating that Ms. Wilkinson was prone to high blood pressure and had arteriosclerosis; that she had hallucinations on occasion; that she erroneously referred to Mrs. Moore as "sister," and that she refused to put on certain clothes, thinking they were her wedding gown. Although this testimony tended to show that Ms. Wilkinson may have suffered from mental delusions on occasions prior to and after the day the will was executed, it does not necessarily follow that the terms of her will were influenced thereby. *Lindley v. Lindley*, 384 S.W.2d 676, 679 (Tex.1964). The jury was at liberty to conclude that a preponderance of the evidence did not establish that these mental lapses persisted and had some probability of being the same condition that obtained at the time Ms. Wilkinson executed her will. *Lee v. Lee*, supra. A review of the entire record does not indicate that the jury's finding in this respect is against the great weight and preponderance of the evidence, and the contestant's fifth point of error is overruled.

In his first four points of error the contestant complains that the trial court erred in refusing to issue a writ of attachment to Dr. Reagan, who had been subpoenaed as a witness, and in excluding certain hospital records tending to show that Dr. Reagan had noted that Ms. Wilkinson appeared to be "senile" on occasions prior to and after the date the will was executed.

The record reflects that the trial court refused to issue the writ of attachment because it was established that Dr. Reagan would be unable to appear at trial due to health problems and recent surgery.

The record indicates that the proponent's application to probate the will in question was filed on October 22, 1975, and that the will was admitted to probate on November 14, 1975. Dr. Reagan's deposition was taken in November, 1977, and the hospital records in question were filed with his deposition in June, 1978. In July, 1978, this case proceeded to trial, and during the course of trial Dr. Reagan's deposition was read into evidence. That trial was not completed because the contestant was permitted to withdraw his announcement of ready, and the case was not finally tried until June, 1980. During the period of time following the initial taking of Dr. Reagan's deposition, the contestant made no effort to further depose him with respect to these hospital records even though other discovery procedures were being conducted.

■ A party's failure to obtain the deposition of a witness residing within 100 miles of the courthouse in the county in which the suit is pending is not regarded as want of diligence, where diligence has been used to secure the witness's personal attendance by subpoena or attachment, *unless the witness is unable to attend by reason of age, infirmity or sickness.*" (emphasis added) Tex.R. Civ.P. 186. If the will contestant in the case at bar decided to wait until the time of trial to complete Dr. Reagan's testimony with respect to these hospital records, he assumed the risk that Dr. Reagan's health might prevent his attendance. *Acker v. Thompson*, 128 S.W.2d 852 (Tex.Civ.App.— Fort Worth 1939, writ granted, rev'd by agr.). The record does not demonstrate that the trial court abused its discretion in denying the contestant's application for a writ of attachment. *City of Dallas v. Lentz*, 81 S.W. 55 (Tex.Civ.App.1904, writ ref'd); *Kieffer v. Miller*, 560 S.W.2d 431 (Tex.Civ.App.—Beaumont 1977, writ ref'd

n.r.e.); *Shockley v. Payne,* 348 S.W.2d 775 (Tex.Civ.App.—Amarillo 1961, writ ref'd n.r.e.).

Neither does it appear from the record that the trial court erred in refusing to admit into evidence the hospital records marked Exhibits C–6 through C–11 which the contestant offered 1) to show that Dr. Reagan had noted Ms. Wilkinson as being "senile" on various examinations both prior to and subsequent to the date of the execution of her will, and 2) to impeach Dr. Reagan's deposition testimony.

Exhibits C–6, 7, 9, 10 and 11 were dated a year and a half or more from the date the will was executed and were rejected by the trial court as being too remote in time. This ruling will not be disturbed. Exhibit C–8, dated six months prior to the date of the execution of the will, was excluded by the trial court on the ground that a diagnosis of senility was dependent primarily upon speculation and expert medical opinion and, thus, lacked the requisite medical certainty to satisfy Tex.Rev.Civ.Stat. Ann. article 3737e. The record does not reflect that the trial court abused its discretion in this respect. *Loper v. Andrews,* 404 S.W.2d 300, 305 (Tex.1966).

This court will also uphold the trial court's action in excluding the medical records offered as impeachment of Dr. Reagan's deposition testimony. A party seeking to impeach a witness by proving a prior inconsistent statement must first question the witness concerning whether he made the prior statement and must give the witness an opportunity to explain the apparent contradiction. *International & G.N. Ry. Co. v. Boykin,* 99 Tex. 259, 89 S.W. 639 (1905); *St. Louis Southwestern Ry. Co. of Texas v. Bishop,* 291 S.W. 343 (Tex.Civ.App. —Waco 1927, writ dism'd). In the case at bar the contestant made no effort to further depose Dr. Reagan with respect to these medical records, and as noted, Dr. Reagan was not in attendance at the trial of the case. Therefore, the deposition testimony was not subject to impeachment by introduction of prior inconsistent statements. *St. Louis Southwestern Ry. Co. of Texas v. Bishop,* supra.

In view of the ample showing that Ms. Wilkinson possessed testamentary capacity *on the date* the will was executed, and there being no evidence to the contrary, the trial court did not err in excluding the proffered exhibits as being irrelevant to the issue of testamentary capacity on that date. Furthermore, even if such action be considered error, it was not shown to be reversible error by demonstrating that its exclusion was reasonably calculated to and probably did result in an improper verdict. Tex. R.Civ.P. 434; *Gonzalez v. Texas Dept. of Human Resources,* 581 S.W.2d 522, 532 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.), cert. denied, 445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980).

The judgment of the trial court is affirmed.