**In re ESTATE OF Gerald Pat ARRINGTON, Deceased.**

No. 01–10–00542–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 1, 2012.

---

David R. Toups, Bennett, Weston, La-Jone & Turner, P.C., Dallas, TX, for Appellant.

Carlton Bryan Cantrell, Cantrell Ray & Barcus, LLP, Huntsville, TX, for Appellee.

Panel consists of Justices KEYES, BLAND, and SHARP.

## OPINION

JANE BLAND, Justice.

This is a will contest case. The testator's wife, Brenda Arrington, challenges the trial court's judgment, rendered on a jury verdict, admitting the will to probate and appointing the testator's daughter, Patricia Daley, the executrix of the will. The jury found that the disputed will was validly executed and the testator, Gerald Pat Arrington, possessed testamentary capacity. On appeal, Brenda contends that no evidence supports the jury's findings. We affirm.

## Background

Two days after doctors diagnosed him with an inoperable brain tumor, Gerald Pat Arrington ("Pat") executed a self-proved will naming his daughter, Patricia, as the independent executrix and sole beneficiary of his estate. See TEX. PROB.CODE ANN. § 59(a), (b) (West 2003) (allowing for wills to be self-proved by affidavits of testator and subscribing witnesses meeting certain requirements). As recited in his will, Pat was married at the time to Brenda Arrington, but they were separated pending a divorce. The couple had no children together. Pat's will names his children from previous relationships: Mi-chael Lee Arrington, Blake Jon Arrington, Patricia Jacqueline Arrington Daley, Lora Lara, and Jennifer Gale Arrington. Although Pat's final will acknowledges each of his children and his wife Brenda, Pat made no provision for any of them save Patricia.

Pat executed his final will at a bank, on December 27, 2004, in the presence of two subscribing witnesses and a notary. Appended to Pat's will are sworn affidavits from Rachael Wells and Deanie Vezurk, the two subscribing witnesses, averring to the requirements set forth in section 59(a) of the Texas Probate Code for self-proving affidavits. See TEX. PROB.CODE ANN. § 59(a). The subscribing witnesses and the notary, Sarah Nobles, testified at trial to the facts set forth in the affidavits: that Pat signed his will in the presence of two subscribing witnesses, the witnesses signed the will in his presence, and the subscribing witnesses were over the age of fourteen. See id.

The witnesses and the notary also testified to Pat's mental capacity on the date he executed his will. Vezurk recounted that Pat had lived near her and, based on her interactions with him, he appeared of sound mind the day he executed his will. Wells testified that she was not well acquainted with Pat, but that Pat understood that he was executing his final will. Finally, Nobles testified that she had frequently interacted with Pat during her twenty years as a bank employee and, based on her familiarity with him, nothing about Pat's demeanor was out of the ordinary the day he executed his will. Nobles recalled that Pat had told her that he needed to get his last will and testament notarized that day.

Pat suffered from headaches as a result of his tumor and took steroids to allay his symptoms. Despite his diagnosis, witnesses testified that Pat was mentally

competent in December 2004, and he had not experienced memory loss as a result of his condition. Pat's sisters testified that Pat had maintained his mental faculties until his death.

In addition to the brain tumor, Pat had been suffering from the effects of an electric shock accident in 1983. Pat had difficulty speaking and an unsteady gait following the accident. Pat's condition improved over time. Rehabilitative therapy had enabled Pat to work cattle, ride horses, and drive. He continued to engage in these activities until 2005, when treatment for his tumor began to impede his daily activities. Pat died in December 2005.

Witnesses also testified about the nature of Pat's family relations. The executrix, Patricia, had lived with Pat since her birth. After she married David Daley, the couple resided at Pat's home. The Daleys helped Pat care for his land and work cattle. Pat's son, Blake, testified that Pat had told him that Pat would will his entire estate to Patricia. Blake reasoned that Pat did so because Patricia was Pat's only "stable" child, acted as the family matriarch, and could be depended on to keep Pat's land in the family. Blake testified that Pat did not devise his separate property to his wife Brenda because Brenda had not lived with Pat during the four years preceding his death; Pat had become certain that Brenda would sell his property if he left it to her.

After Pat's death, Patricia applied to probate his final will. Brenda contested the application. A jury found in favor of Patricia, determining that (1) the proffered will was the will that Pat had executed in December 2004, (2) Pat validly executed the will, and (3) Pat possessed testamentary capacity on the day he executed it. Brenda moved for judgment notwithstanding the verdict and a new trial. The trial court denied Brenda's motions and admit-

ted the will to probate. On appeal, Brenda maintains that the trial court erred in admitting the will to probate because no evidence supports the jury's findings that the proffered will was valid and that Pat had testamentary capacity on the day he executed it.

*Standard of Review*

A trial court may disregard a jury's verdict and render a judgment notwithstanding that verdict if the evidence is legally insufficient to support the jury's findings or a directed verdict would have been proper because a legal principle precludes recovery. Tex.R. Civ. P. 301; *see* Fort Bend Cnty. Drainage *Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991); *Williams v. Briscoe,* 137 S.W.3d 120, 124 (Tex.App.-Houston [1st Dist.] 2004, no pet.). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact-finder could and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* If the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id.* at 822.

*Validity of the Will*

To admit a will to probate, a trial court must find that it is valid. *Guthrie v. Suiter,* 934 S.W.2d 820, 829 (Tex.App.-Houston [1st Dist.] 1996, no writ). Patricia, the proponent of the will, had the burden to establish validity. *See Croucher v. Croucher,* 660 S.W.2d 55, 57 (Tex.1983); *Douthit v. McLeroy,* 539 S.W.2d 351, 352 (Tex.1976) (per curiam).

To be valid, a will must conform to the requirements set forth in section 59(a) of the Probate Code. Tex. Prob.Code

ANN. § 59(a). With exceptions inapplicable here, section 59(a) provides that a will is valid if it is (1) in writing, (2) signed by the testator, and (3) attested by two or more credible witnesses above the age of fourteen years, who write their signatures in the testator's presence. *Id.* Section 59(a) further provides that a will may be made "self-proved, and the testimony of the witnesses in the probate thereof may be made unnecessary, by the affidavits of the testator and attesting witnesses, made before an officer authorized to administer oaths." *Id.* A self-proved will is prima facie evidence that the will was properly executed. *See Guthrie*, 934 S.W.2d at 829; *see also Bracewell v. Bracewell*, 20 S.W.3d 14, 26 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Accordingly, a self-proved will may be admitted to probate without the testimony of any subscribing witnesses. TEX. PROB.CODE ANN. § 59(c); *Guthrie*, 934 S.W.2d at 829.

▮▮▮▮ Pat executed his final will in the presence of two witnesses and a notary. Appended to his will are affidavits from Rachael Wells and Deanie Vezurk, the two subscribing witnesses, averring to the language provided by section 59(a) for self-proving affidavits. *See* TEX. PROB.CODE ANN. § 59(a), (b). Because Pat's will contains affidavits from the subscribing witnesses reciting the language set forth in section 59(a), it is a self-proved will. *Id.* Thus, Patricia's proffer of the will itself was prima facie evidence that the will was validly executed; she needed no further proof to demonstrate its validity. TEX. PROB.CODE ANN. § 59(c). Nevertheless, Patricia presented testimony at trial from both subscribing witnesses. They confirmed the facts set forth in their affidavits, recalling that they had affixed their signatures to Pat's will in his presence and that Pat had signed his will in their presence. Both witnesses confirmed that they were over the age of fourteen.

▮▮▮▮ Brenda challenges the jury's finding of valid execution because the subscribing witnesses did not testify that Pat signed each page of the proffered will nor did they read the contents of the will. But the statute does not require that a will's contents be published to its witnesses. *See* TEX. PROB.CODE ANN. § 59(a); *Brown v. Traylor*, 210 S.W.3d 648, 664 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (publication not prerequisite to validity; contents must be proved only if will cannot be produced in court). Nor does the Probate Code require testimony that the testator initialed every page of his final will. *See* TEX. PROB.CODE ANN. § 59(a) (will not wholly in testator's handwriting shall be signed). Both witnesses executed affidavits that track the format within Chapter 59, and testified that Pat declared that they were witnesses to his last will, which Pat executed on December 27, 2004. Although Brenda implies in her reply brief that the will Patricia sought to admit to probate was not the December 27 will, the jury expressly found that it was. The affidavits and testimony of the testamentary witnesses support the jury's finding.

The proffered will complies with all statutory requirements for a self-proved will. As the will was executed in compliance with the solemnities prescribed by the Probate Code, we hold that it was validly executed.

*Testamentary Capacity*

▮▮▮▮ Testamentary capacity means that the testator has possession of sufficient mental ability at the time of execution of the will (1) to understand the effect of making a will and the general nature and extent of the testator's property, (2) to know the testator's next of kin and the natural objects of his bounty, and (3) to have sufficient memory to assimilate the

elements of executing a will, to hold those elements long enough to perceive their obvious relation to each other, and to form a reasonable judgment as to them. *Prather v. McClelland,* 76 Tex. 574, 584–85, 13 S.W. 543, 545–46 (1890); *Guthrie,* 934 S.W.2d at 829; *Wilkinson v. Moore,* 623 S.W.2d 662, 663–64 (Tex.Civ.App.-Houston [1st Dist.] 1981, writ dism'd). In a will contest challenging testamentary capacity, the issue is the condition of the testator's mind on or around the date he executed the will. *Wilkinson,* 623 S.W.2d at 663–64. A challenger to the will's validity may also rely on evidence of incompetence on occasions both before and after the execution date if the condition persisted and had some probability of being "the same condition which obtained at the time of the will's making." *Guthrie,* 934 S.W.2d at 830; *Croucher,* 660 S.W.2d at 57.

The jury in this case heard both kinds of evidence. The jury heard direct evidence of Pat's mental condition on the date the will was executed. Both subscribing witnesses testified that Pat was of sound mind when he signed his will at the bank. One subscribing witnesses had known Pat for twenty years. She testified that nothing about Pat's demeanor was out of the ordinary that day. The notary also provided direct evidence of Pat's mental condition. She testified that, on the date Pat signed his will, Pat was of sound mind, was capable of conversation, and answered her questions. She further recounted that Pat told her that he was signing his will and that it needed to be notarized.

The jury in this case also heard testimony about Pat's health problems, including testimony about a 1983 electric shock accident, his headaches, and his declining health in 2005. Brenda conceded that Pat performed his daily work after the accident; he worked cattle on horseback. Members of Pat's family testified that Pat possessed all his mental faculties after the accident, noticing no change in his daily behavior beyond some difficulty walking. The jury heard testimony that, in December 2004, Pat suffered from headaches and was taking steroids to treat the symptoms of his brain tumor. Pat's sisters, a son, a daughter, and a co-worker each testified that, despite this condition, Pat acted like himself during that time. They recalled that Pat provided them with driving directions to his doctor's office. After doctors biopsied his tumor in 2005, Pat became partially paralyzed. Pat no longer cared for himself but relied on his family to care for him. Nevertheless, Pat's sisters testified that he maintained his mental faculties until his death.

■ Brenda argues that the evidence that Patricia adduced is legally insufficient. She claims that, because no evidence demonstrates that Pat discussed his children or the approximate nature of his property with the witnesses on the date he executed his will, Pat lacked the capacity to make a judgment about bequeathing his property. She asserts that Pat did not know who his children were because his will names a child whom he never adopted in a legal proceeding, and it omits an alleged sixth child. But a finding of testamentary capacity does not hinge entirely on direct evidence that the testator discussed the details of his children, wealth, or disposition at the time he signed his will. *See Prather,* 76 Tex. at 584–85, 13 S.W. at 545–46. The jury heard direct evidence of Pat's general mental condition on the day he executed his will and the attending months before and after: this evidence supports its determination that Pat knew that he was executing his will and that he had deliberately chosen Patricia to be his sole beneficiary. The evidence at trial "would enable reasonable and fair-minded

people to reach the verdict under review." *See City of Keller*, 168 S.W.3d at 827.

We hold that the evidence is legally sufficient to support the jury's finding of testamentary capacity. *See Collins v. Smith*, 53 S.W.3d 832, 843 (Tex.App.Houston [1st Dist.] 2001, no pet.) (testimony that testator was of sound mind and knew what he was doing when he executed will was sufficient to remove any suspicion surrounding wills execution); *Horton v. Horton*, 965 S.W.2d 78, 86 (Tex.App.-Fort Worth 1998, no pet.) (evidence testator had taken pain medication and experienced hallucinations was not sufficient to show incapacity where witnesses testified testator was of sound mind when he executed will and no direct evidence demonstrated he experienced hallucinations at time he signed will).

### Conclusion

The trial court properly upheld the jury's findings on validity and testamentary capacity. It properly admitted the will to probate. We therefore affirm the judgment of the trial court.